672 S.E.2d 242

**Dylan TURNER, Rhiannon Turner, Ronan Turner, By Their Next Friend and Parent Diane TURNER, and Diane Turner, Individually and on Her Own Behalf, Plaintiffs Below, Appellants,**

v.

**Charles TURNER, Sr., Charles Turner, Jr., and Laurie Turner, Defendants Below,**

and

**City Hospital, Intervenor Below, Appellee.**

No. 33892.

Supreme Court of Appeals of West Virginia.

Submitted: Oct. 7, 2008.

Decided: Dec. 15, 2008.

Dissenting Opinion of Justice Starcher Dec. 30, 2008.

Brenda Waugh, Esq., Brenda Waugh, Attorney at Law, LC, Martinsburg, for the Appellants.

Christine S. Vaglienti, Esq., Associate Litigation Counsel, West Virginia University Hospitals, Inc., Morgantown, for the Appellee.

MAYNARD, Chief Justice.[1]

The plaintiffs below and appellants herein, Dylan Turner, Rhiannon Turner, and Ronan Turner, by their next friend and parent Diane Turner, and Diane Turner, individually, brought a petition in the Circuit Court of Berkeley County, pursuant to W.Va.Code § 44–10–14 (2002), for approval of proposed minor settlements reached with the defendants below, Charles Turner, Sr., Charles Turner, Jr., and Laurie Turner, arising from an automobile accident in which Ms. Turner's three minor children were injured. The intervenor below and appellee herein, City Hospital, Inc., intervened in the settlement proceedings to assert subrogation rights to any settlement proceeds collected by Ms. Turner. The appellants are now appealing the circuit court's order of September 26, 2007, that ruled that the court has no jurisdiction under the Employee Retirement Income Security Act ("ERISA") to decide City Hospital's subrogation rights under the proposed settlement. After careful consideration of this matter, we affirm the circuit court.

## I.

## FACTS

On October 4, 2004, Defendant Charles Turner, Jr., was operating a vehicle with the permission of the vehicle's owners, his father, Defendant Charles Turner, Sr., and his stepmother, Defendant Laurie Turner. Mr. Turner, Jr.'s children, Rhiannon, who was seven years of age at the time, Dylan, then age five, and Ronan, then age four, were passengers in the vehicle. Mr. Turner, Jr., wrecked the vehicle when he ran it into a utility pole.[2] All three children were injured with Ronan suffering the most severe injuries. According to the appellants, it is anticipated that Ronan will incur future medical costs as a result of injuries to his colon.

Ronan's total medical bills to date as a result of the accident are $111,088.19; Dylan's medical bills total $5,473.85; and Rhiannon's medical bills total $688.27. The children's medical bills were paid first by Charles Turner, Sr.'s insurance coverage in the amount of $5,000 for each child. The balance of the children's medical bills was paid, for the most part, by the employee benefit plan provided to Diane Turner, the children's mother, through her employer and intervenor herein, City Hospital, Inc.[3] Ms. Turner's children are beneficiaries under the

---

1. Pursuant to an administrative order entered on September 11, 2008, the Honorable Thomas E. McHugh, Senior Status Justice, was assigned to sit as a member of the Supreme Court of Appeals of West Virginia commencing September 12, 2008, and continuing until the Chief Justice determines that assistance is no longer necessary, in light of the illness of Justice Joseph P. Albright.

2. According to the appellants, Mr. Turner, Jr. was prosecuted for driving under the influence and felony child neglect as a result of the accident.

3. These amounts were paid through InforMed, the third party administrator of City Hospital's employee benefit plan.

City Hospital Group Benefit Plan. According to the plan's reimbursement/subrogation provisions, in part:

## RIGHT OF REIMBURSEMENT AND SUBROGATION

To the extent The Plan pays or reimburses any medical or other expense for a Covered Person, it shall have the right to be reimbursed for those expenses from any recovery that any Covered Person may obtain from or against any individual ... or any other entity which may be liable for such payment as the result of negligence, contract, or otherwise, including, but not limited to, that Covered Person's own insurance company (for example, that Covered Person's own uninsured or underinsured motorist coverage for automobile insurance medical payments provisions or homeowner's coverage) (hereinafter referred to as "Responsible Party"); this is known as The Plan's right of reimbursement.

... If the Plan Administrator determines, in its sole discretion, that the Covered Person is not adequately protecting the Plan's interests in connection with his or her pursuit of a claim against any Responsible Party, then the Plan Administrator, on behalf of the Plan, shall have the right to intervene in the civil action, lawsuit, or claim which the Covered Person has filed or made against any Responsible Party to the extent the Plan has paid or reimbursed any medical or other expenses for that Covered Person under The Plan; this is known as the Plan's right of subrogation.

The Plan's rights of reimbursement and subrogation are hereinafter referred to as "Right of Subrogation."

The Plan's Right of Subrogation shall constitute an equitable lien against the proceeds (no matter how they are characterized) of any: (1) settlement or compromise between a Covered Person and any Responsible Party; or (2) judgment or award obtained by any Covered Person against any Responsible Party. Further, the Plan's Right of Subrogation shall constitute such lien notwithstanding any allo-

cation or apportionment that purports to dispose of portions of the Covered Person's cause of action not subject to the Plan's Right of Subrogation. Any settlement, compromise, judgment, or award which excludes or limits or attempts to exclude or limit the cost of medical care or services, or medical products ... shall not preclude the Plan from enforcing its Right of Subrogation and/or subrogation lien. The Plan's Right of Subrogation and/or subrogation lien shall not be eliminated or limited in any way should the settlement, compromise, judgment, or award fail to fully compensate or "make whole" the Covered Person on his or her total claim against any Responsible Party.

\*    \*    \*    \*    \*    \*

A Covered Person and/or his or her legal counsel shall promptly pay to the Plan Administrator all amounts recovered as a result of any settlement, compromise, judgment, or award to the extent that any medical or other expenses for that Covered Person have been paid under the Plan.... The Plan has no obligation or duty to pay any legal fees or expenses incurred by such Covered Person in reaching a settlement or compromise or obtaining a judgment or award.

The appellants thereafter reached a tentative settlement agreement with the defendants' insurer, Westfield Insurance Company, and Ms. Turner's underinsurer, Nationwide Insurance Company, on behalf of her children. Under the proposed settlement, Ms. Turner agreed to waive her interest in the settlements and settle the children's cases within the policy limits so long as City Hospital would be precluded by the circuit court from asserting a lien on the settlement proceeds that is inconsistent with state law. The policy limits on the Westfield policy are $100,000 per person and $300,000 per accident. The policy limits on the Nationwide policy are $15,000 per person. Because Ms. Turner's children are minors, she was required to seek the circuit court's approval of the settlement

pursuant to W.Va.Code § 44–10–14.[4]

City Hospital, as fiduciary of its employee benefit plan, subsequently filed an objection to the proposed settlements and a motion for continuance in order to assert its plan's reimbursement/subrogation rights. In this objection and motion, City Hospital requested that the circuit court,

> reschedule [a previously scheduled] hearing on the Petitions before it so as to allow counsel for [City Hospital] to attend the hearing. [City Hospital] also respectfully requests that the Court deny the Petitions as currently presented inasmuch as said Petitions make no provision for reimbursement of [City Hospital's] health insurance benefits plan for the health insurance benefits expended on behalf of Diane Turner's children, Dylan, Rhiannon and Ronan.

The circuit court considered the objection as a motion to intervene pursuant to Rule 24(a) of the West Virginia Rules of Civil Procedure, and granted the motion. Thereafter, the circuit court directed the parties to submit briefs addressing City Hospital's assertion of its subrogation rights, including but not limited to whether the circuit court had jurisdiction to consider the petitions for approval of the minor settlements in light of ERISA's governance of City Hospital's employee benefit plan.[5]

By order of September 26, 2007, the circuit court determined that it had jurisdiction to approve or disapprove the proposed settlements pursuant to W.Va.Code § 44–10–14. However, the circuit court found that it did not have jurisdiction to decide, limit, or enforce City Hospital's subrogation rights. The court reasoned that City Hospital was effectively asking for equitable relief, and that a request for such relief by a fiduciary of an ERISA plan can be brought only in federal district court pursuant to 29 U.S.C. § 1132(e)(1). The appellants now appeal the circuit court's order to the extent that the

court found that it did not have jurisdiction to decide the subrogation issue.

## II.

### STANDARD OF REVIEW

The circuit court determined that it does not have the power to decide City Hospital's subrogation rights to the proposed minor settlements because ERISA preempts the subrogation issue. This is a conclusion of law that this Court reviews *de novo*. See Syllabus Point 1, *Appalachian Power Co. v. Tax Dept.*, 195 W.Va. 573, 466 S.E.2d 424 (1995) (holding that interpreting a statute presents a purely legal question subject to *de novo* review); *Kollar v. United Transp. Union*, 83 F.3d 124, 125 (5th Cir.1996) (recognizing that "preemption is a question of law reviewed *de novo* " (citation omitted)).

## III.

### DISCUSSION

*1. Appealability of Circuit Court Order*

As a preliminary matter, we must determine whether this case is properly before this Court. City Hospital argues that the circuit court order from which this appeal is taken is not a final order because it did not terminate the litigation between the parties on the merits, but expressly stays the action pending the court's next order. The appellants counter that the order falls under the exception to the finality rule announced by this Court in *Durm v. Heck's, Inc.*, 184 W.Va. 562, 401 S.E.2d 908 (1991). We agree with the appellants.

According to W.Va.Code § 58–5–1 (1998), in applicable part,

> A party to a civil action may appeal to the Supreme Court of Appeals from a final judgment of any circuit court or from an order of any circuit court constituting a final judgment as to one or more but fewer

---

4. W.Va.Code § 44–10–14 is known as the "Minor Settlement Proceedings Reform Act" and provides that settlements negotiated on behalf of minors must be approved by a circuit court.

5. In its brief to the circuit court on the issue of preemption, City Hospital asked the circuit court

to preserve the proceeds of any settlement in order to permit City Hospital to seek equitable relief in federal district court pursuant to 29 U.S.C. § 1132(a)(3). To date, City Hospital has not filed any action against the appellants in either state or federal district court.

than all claims or parties upon an express determination by the circuit court that there is no just reason for delay and upon an express direction for the entry of judgment as to such claims or parties.

This Court has indicated that "[o]ur jurisdiction is limited by Code, 58–5–1, and we are not warranted in entertaining jurisdiction in cases which do not come within the requirements of that section." *Leeson v. Smith*, 132 W.Va. 715, 722, 53 S.E.2d 412, 415 (1949). *See also* Syllabus Point 1, in part, *James M.B. v. Carolyn M.*, 193 W.Va. 289, 456 S.E.2d 16 (1995) ("[t]his Court's jurisdictional authority is either endowed by the West Virginia Constitution or conferred by the West Virginia Legislature."). We have further held:

Under W.Va.Code, 58–5–1 [1998],[6] appeals only may be taken from final decisions of a circuit court. A case is final only when it terminates the litigation between the parties on the merits of the case and leaves nothing to be done but to enforce by execution what has been determined.

Syllabus Point 3, *James M.B., supra.*

In the case of *Durm v. Heck's, Inc., supra,* a shopper brought an action for injuries she suffered in a slip and fall accident which occurred on a sidewalk adjacent to a Foodland in which she sued both Foodland and Heck's, the shopping center owner. The circuit court granted summary judgment on behalf of Foodland, and the plaintiff appealed. Before this Court, Heck's contended that the appeal was improper under Rule 54(b) of the West Virginia Rules of Civil Procedure, which states, in pertinent part:

when ... multiple parties are involved [in a claim before the court], the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than

all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties[.]

Heck's argued that the absence of language in the summary judgment order which reflects "an express determination that there is no just reason for delay and ... an express direction for the entry of judgment" rendered the judgment interlocutory rather than final in nature.

■ This Court rejected this argument and explained:

The key to determining whether the order granting summary judgment and dismissing Foodland from this case with prejudice is a final order subject to appeal is not whether the Rule 54(b) language is included in the order, but whether the order " 'approximat[es]' a final order in its 'nature and effect.' " *Taylor v. Miller*, 162 W.Va. 265, 269, 249 S.E.2d 191, 194 (1978) (quoting *Lloyd v. Kyle*, 26 W.Va. 534, 540 (1885)).... With the enactment of Rule 54(b), an order may be final prior to the ending of the entire litigation on its merits if the order resolves the litigation as to a claim or a party. *See* W.Va.R.Civ.P. 54(b); Fed.R.Civ.P. 54(b).

An examination of the order entered by the circuit court reveals that the court fully resolved the issue of Foodland's liability by ruling that "the claims brought by Plaintiff Cynthia R. Durm arising from her alleged accident ... may be asserted only against the party then owning the property, Heck's, Inc." By making this ruling and dismissing Foodland with prejudice, there can be no question that as to Foodland the litigation had ended. Accordingly, the order, if not technically final for absence of Rule 54(b) language ... certainly is final in its "nature and effect." *Taylor*, 162 W.Va. at 268–69, 249 S.E.2d at 194.

*Durm*, 184 W.Va. at 566, 567, 401 S.E.2d at 912, 913 (footnote omitted). In Syllabus Point 2 of *Durm*, the Court held:

---

**6.** This syllabus point originally referenced the 1925 version of the statute. The statute was amended in 1998. Because this amendment

does not change the rule of law announced in *James M.B. v. Carolyn M.*, we refer to the 1998 version of the statute in the syllabus point.

Where an order granting summary judgment to a party completely disposes of any issues of liability as to that party, the absence of language prescribed by Rule 54(b) of the West Virginia Rules of Civil Procedure indicating that "no just reason for delay" exists and "directi[ng] . . . entry of judgment" will not render the order interlocutory and bar appeal provided that this Court can determine from the order that the trial court's ruling approximates a final order in its nature and effect.

■ We find that the circuit court's order below falls under our rule in *Durm*. While the order does not contain any language from Rule 54(b), the circuit court expressly found that it "DOES NOT HAVE JURISDICTION to decide, limit, or enforce [City Hospital's] subrogation rights to the Proposed Minor's Settlements Submitted on Behalf of Dylan, Rhiannon, and Ronan Turner because ERISA preempts the state law claims asserted by the Plaintiffs." This finding had the nature and effect of ending the litigation between the appellants and City Hospital with regard to City Hospital's reimbursement/subrogation claim. Therefore, we conclude that the circuit court's order is properly appealable to this Court. Having thus decided, we now proceed to address the substantive issue raised in this case.

### 2. *Jurisdiction Under ERISA*

The sole issue on appeal to this Court is whether the circuit court properly determined that it does not have jurisdiction pursuant to ERISA to decide, limit, or enforce City Hospital's employee health plan's subrogation rights to the proposed minor settlements submitted on behalf of Dylan, Rhiannon, and Ronan Turner. We begin our discussion by recognizing that ERISA applies to "any plan, fund, or program . . . established or maintained by an employer . . . for the purpose of providing its participants or their beneficiaries . . . medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment[.]" 29 U.S.C. § 1002(1). The purpose of ERISA is "to promote the interests of employees and their beneficiaries in employee benefit plans,

and to protect contractually defined benefits." *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 113, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989) (internal quotation marks and citations omitted). The appellants do not seriously contend that the plan at issue is not an ERISA plan. During oral argument before this Court, the appellants agreed that City Hospital's plan is an ERISA plan "of some sort."

Next, it is important for this Court to distinguish between ordinary preemption and complete preemption under ERISA. The first type of preemption is known as ordinary or conflict preemption and arises from 29 U.S.C. § 1144(a). The second type of preemption is known as complete preemption and arises from 29 U.S.C. § 1132(a) in conjunction with § 1132(e). One court has explained:

In the ERISA context, the doctrines of conflict preemption and complete preemption are important, and they are often confused. Section 514 of ERISA defines the scope of ERISA's preemption of conflicting state laws: state laws are superseded insofar as they relate to an ERISA plan. The fact that a state law claim is preempted by ERISA—i.e., that it conflicts with ERISA's exclusive regulation of employee welfare benefit plans—does not, however, provide a basis for removing the claim to federal court. The only state law claims properly removable to federal court are those that are completely preempted by ERISA's civil enforcement provision, § 502(a).

*Sonoco Products Co. v. Physicians Health Plan,* 338 F.3d 366, 371 (4th Cir.2003) (internal quotation marks, citations, and footnote omitted).

With regard to conflict preemption, 29 U.S.C. § 1144(a) provides that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title."

Under conflict preemption, which is also known as "ordinary" preemption, "state laws that conflict with federal laws are preempted, and preemption is asserted as

'a federal defense to the plaintiff's suit. As a defense, it does not appear on the face of a well-pleaded complaint, and, therefore, does not authorize removal to federal court."' *Darcangelo. v. Verizon Communications, Inc.*, 292 F.3d 181, 186–87 (4th Cir.2002) (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987)). In terms of ordinary preemption, state laws conflict with ERISA and are therefore preempted by ERISA if they "relate to" an ERISA plan. 29 U.S.C. § 1144(a). In those types of situations, ERISA conflict preemption may be used as a defense to a state-law action, but it does not provide a basis for removal to federal court.

*Radcliff v. El Paso Corp.*, 377 F.Supp.2d 558, 561 (S.D.W.Va.2005).

The circuit court below did not find that the issue of City Hospital's alleged reimbursement/subrogation rights was preempted under 29 U.S.C. § 1144(a). Thus, we do not address preemption under § 1144(a) in this opinion. Rather, the circuit court found that jurisdiction to decide the Plan's request for relief resides only in federal district court pursuant to 29 U.S.C. § 1132(a)(3)[7] which provides:

A civil action may be brought -

(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan[.]

According to 29 U.S.C. § 1132(e)(1):

Except for actions under subsection (a)(1)(B)[8] of this section, the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, fiduciary, or any person referred to in section 1021(f)(1) of this title. State courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under paragraphs (1)(B) and (7)[9]

---

7. The two types of ERISA preemption are discussed in *Moore's Manual on Federal Practice and Procedure* as follows:

Complete preemption applies only in the extremely limited circumstance that Congress intends in a particular area to supersede both the substantive and remedial provisions of state law and create a federal remedy for violation of the law that is exclusive, even when a claimant attempts to rely entirely on state law in state court. To date, the Supreme Court has found only three federal statutes to have this broad preemptive scope: the Labor Management Relations Act, the Employee Retirement Income and Security Act, and the National Bank Act for claims of usury against national banks.

Some courts have noted that the label of this exception is not entirely accurate because the doctrine is not one of preemption, but rather one of federal jurisdiction. Furthermore, removal and preemption are two distinct concepts, and the fact that a claim may be preempted does not necessarily establish that it is covered by federal question jurisdiction. A better term might be "jurisdictional preemption" because it is a doctrine that not only preempts the substantive state law but also supports federal jurisdiction to address the issue regardless of the procedural context in which the matter is brought before the federal court. It should also be noted that a claim of ordinary preemption, as opposed to complete preemption (jurisdictional preemption), is not a defense to the well-pleaded complaint rule. "Ordinary preemption" is an affirmative defense to the allegations in a plaintiff's complaint asserting a state law claim claiming that a state law conflicts with, and is overridden by, a federal law. On the other hand, complete preemption does not constitute a defense at all. Rather, it is a narrowly drawn jurisdictional rule for assessing federal removal jurisdiction when a complaint purports to raise only state law claims. It looks beyond the complaint to determine if the suit is actually and entirely a matter of federal law, even if the state law would provide a cause of action in the absence of the federal law. Therefore, complete preemption creates the federal question jurisdiction requisite to removal of the claim to federal courts.

1 *Moore's Manual—Federal Practice and Procedure* (2008) § 5.13[3][b] (footnotes omitted).

8. Pursuant to 29 U.S.C. § 1132(a)(1)(B),

A civil action may be brought -
(1) by a participant or beneficiary -
(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[.]

9. According to 29 U.S.C. § 1132(a)(7), "A civil action may be brought—(7) by a State to enforce compliance with a qualified medical child support order (as defined in section 1169(a)(2)(A) of this title)[.]"

of subsection (a) of this section. (Footnotes added).

In *Aetna Health Inc. v. Davila*, 542 U.S. 200, 124 S.Ct. 2488, 159 L.Ed.2d 312 (2004), the Supreme Court discussed the nature of the enforcement remedies provided for in § 1132(a) as follows:

ERISA's "comprehensive legislative scheme" includes "an integrated system of procedures for enforcement." [*Massachusetts Mut. Life Ins. Co. v.*] *Russell,* 473 U.S. [134], at 147 [105 S.Ct. 3085, 87 L.Ed.2d 96] [1985] (internal quotation marks omitted). This integrated enforcement mechanism, ERISA § 502(a), 29 U.S.C. § 1132(a), is a distinctive feature of ERISA, and essential to accomplish Congress' purpose of creating a comprehensive statute for the regulation of employee benefit plans. As the Court said in *Pilot Life Ins. v. Dedeaux,* 481 U.S. 41 [107 S.Ct. 1549, 95 L.Ed.2d 39] (1987):

"[T]he detailed provisions of § 502(a) set forth a comprehensive civil enforcement scheme that represents a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans. The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA. 'The six carefully integrated civil enforcement provisions found in § 502(a) of the statute as finally enacted ... provide strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly.'" *Id.,* at 54 [124 S.Ct. 2488] (quoting *Russell, supra,* at 146 [105 S.Ct. 3085]).

Therefore, any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore preempted. See 481 U.S., at 54–56 [107 S.Ct. 1549]; see also *Ingersoll–*

*Rand Co. v. McClendon,* 498 U.S. 133, 143–145 [111 S.Ct. 478, 112 L.Ed.2d 474] (1990). *Davila,* 542 U.S. at 208–209, 124 S.Ct. 2488.

■ Based on the clear language of § 1132(a)(3) in conjunction with § 1132(e)(1), and the Supreme Court's application of these provisions, this Court now holds that an action by a fiduciary or administrator of a plan under the Employment Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.,* to obtain appropriate equitable relief to enforce the terms of the ERISA plan pursuant to 29 U.S.C. § 1132(a)(3), must be brought in the federal district courts of the United States as provided for in 29 U.S.C. § 1132(e)(1). We will now address whether a claim by City Hospital for reimbursement or subrogation must be brought under § 1132(a)(3).

In order to qualify for complete preemption under § 1132(a)(3), the relief sought must be equitable in nature. *Great–West Life & Annuity Ins. Co. v. Knudson,* 534 U.S. 204, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002). The Supreme Court has explained that,

The term "equitable relief" [under § 1132(a)(3) ] can assuredly mean ... whatever relief a court of equity is empowered to provide in the particular case at issue. But ... "equitable relief" can also refer to those categories of relief that were *typically* available in equity (such as injunction, mandamus, and restitution, but not compensatory damages).

*Mertens v. Hewitt Associates,* 508 U.S. 248, 256, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993). The recent Supreme Court case of *Sereboff v. Mid Atlantic Medical Services, Inc.,* 547 U.S. 356, 126 S.Ct. 1869, 164 L.Ed.2d 612 (2006), is particularly instructive on the issue of whether the relief sought by City Hospital is equitable for the purposes of § 1132(a)(3). In *Sereboff,* the Supreme Court considered "the circumstances in which a fiduciary under [ERISA] may sue a beneficiary for reimbursement of medical expenses paid by the ERISA plan, when the beneficiary has recovered for its injuries from a third party." 547 U.S. at 359, 126 S.Ct. 1869. The facts of the case involved a fiduciary seeking reimbursements for amounts an ERISA health plan

paid for the medical expenses of beneficiaries, who were injured in an automobile accident, from proceeds of the beneficiaries' settlement with the tortfeasors.

First, the Court distinguished the facts of the case from those in *Great–West.* In *Great–West,* the Court explained that "equitable relief" under § 502(a)(3) requires that the action for restitution "must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession." *Great–West,* 534 U.S. at 214, 122 S.Ct. 708 (footnote omitted). In contrast to *Great–West,* the fiduciary in *Sereboff* sought specifically identifiable funds that were in the possession and control of the beneficiaries-the portion of the settlement proceeds collected from the tortfeasors-in contrast to the beneficiaries' general assets. Therefore, the Court in *Sereboff* concluded that the relief sought by the fiduciary was equitable in nature.

The Court in *Sereboff* further indicated that the fiduciary also had to show that the basis for its claim was equitable. In deciding that the basis for the fiduciary's plan in *Sereboff* was equitable, the Court relied on the case of *Barnes v. Alexander,* 232 U.S. 117, 34 S.Ct. 276, 58 L.Ed. 530 (1914), and explained:

> In [*Barnes* ] ... attorneys Street and Alexander performed work for Barnes, another attorney, who promised them "one-third of the contingent fee" he expected in the case. *Id.,* at 119 [34 S.Ct. 276]. In upholding their equitable claim to this portion of the fee, Justice Holmes recited "the familiar rul[e] of equity that a contract to convey a specific object even before it is acquired will make the contractor a trustee as soon as he gets a title to the thing." *Id.,* at 121 [34 S.Ct. 276]. On the basis of this rule, he concluded that Barnes' undertaking "create[d] a lien" upon the portion of the monetary recovery due Barnes from the client, *ibid.,* which Street and Alexander could "follow ... into the hands of ... Barnes," "as soon as [the fund] was identified," *id.,* at 123 [34 S.Ct. 276].

Much like Barnes' promise to Street and Alexander, the "Acts of Third Parties" provision in the Sereboffs' plan specifically identified a particular fund, distinct from the Sereboffs' general assets—"[a]ll recoveries from a third party (whether by lawsuit, settlement, or otherwise)"—and a particular share of that fund to which [the fiduciary] was entitled—"that portion of the total recovery which is due [the fiduciary] for benefits paid." App. to Pet. for Cert. 38a. Like Street and Alexander in *Barnes,* therefore, [the fiduciary] could rely on a "familiar rul[e] of equity" to collect for the medical bills it had paid on the Sereboffs' behalf. *Barnes, supra,* at 121 [34 S.Ct. 276]. This rule allowed them to "follow" a portion of the recovery "into the [Sereboffs'] hands" "as soon as [the settlement fund] was identified," and impose on that portion a constructive trust or equitable lien. 232 U.S. at 123 [34 S.Ct. 276].

*Sereboff,* 547 U.S. at 363–364, 126 S.Ct. 1869.

In the instant case, the circuit court found in its order that City Hospital is asserting two equitable claims: one claim for reimbursement and another claim to enjoin the distribution of the settlement proceeds. Moreover, the parties do not dispute that the relief sought by City Hospital by intervening in the minor settlement proceeding is equitable in nature. Further, under the express terms of the reimbursement/subrogation provision of City Hospital's plan, City Hospital is not attempting to collect the medical expenses it paid from Ms. Turner's general assets. Rather, City Hospital asserts an equitable lien against a particular fund-any settlement proceeds collected by the appellants from a third party, and a particular share of that fund, "to the extent that any medical or other expenses for [the beneficiaries] have been paid under the Plan[.]"

Therefore, we find that the relief sought by City Hospital under the reimbursement/subrogation provision of its employee benefit plan, to be reimbursed for settlement proceeds paid on behalf of the plan's beneficiaries, is the type of relief clearly provided for in 29 U.S.C. § 1132(a)(3). In other words, any claim for relief in circuit court arising from the reimbursement/subrogation provision in City Hospital's plan would be duplicative of an action under § 1132(a)(3),

and, as noted above, Congress has evinced its intent that the remedies provided for in § 1132(a) are exclusive.

The appellants present several arguments in support of their position that the circuit court has jurisdiction over the relief sought by City Hospital below. Insofar as the bulk of these arguments concern ERISA preemption under § 1144(a), in contrast to § 1132(a)(3), these arguments are not relevant to the issue herein and need not be addressed. However, we find it necessary to address one of the appellants' contentions. Specifically, the appellants contend that under the equitable remedy approved in *Sereboff*, relief is only available to the fiduciary when the funds sought have become available to the beneficiary or plan participant. The appellants point out that this has not yet occurred, and conclude from this that City Hospital has no remedy under § 1132(a)(3). The appellants further assert that even in the event the settlement is approved, the proceeds will never be recoverable by City Hospital because, under the terms of the proposed settlement, the proceeds will not be paid to Diane Turner but will be placed in trust until her children attain the age of majority. The appellants reason that because no proceeds will ever be available to Ms. Turner, the plan participant, City Hospital will never have a claim under § 1132(a)(3) for a portion of the proceeds.

We find no merit to this argument. First, the fact that City Hospital's federal claim has not yet become ripe for litigation in federal district court does not mean that the circuit court has jurisdiction of the claim. City Hospital recognizes that it cannot seek proceeds that have not yet been paid to Diana Turner. For this reason, City Hospital requested the circuit court below, in the event it approved the appellants' proposed settlement, to preserve the funds in a separate account so that City Hospital may file a civil action in federal district court seeking reimbursement of its portion of the settlement proceeds. Second, W.Va.Code § 44–10–14(g) appears to foreclose the possibility that all the proceeds

from a minor settlement can be immediately transferred directly to minor trust accounts and out of the reach of lienholders. According to this subsection:

> The court shall enter an order with findings of fact and granting or rejecting the proposed settlement, release and distribution of settlement proceeds. If the requested relief is granted, the court shall provide by order that an attorney appearing in the proceeding or other responsible person shall negotiate, satisfy and pay initial expense payments from settlement proceeds, the costs and fees incurred for the settlement and any bond required therefor, expenses for treatment of the minor related to the injury at issue, payments to satisfy any liens on settlement proceeds, if any, and such other directives as the court finds appropriate to complete the settlement and secure the proceeds for the minor.

Therefore, we do not believe that the fact that no settlement proceeds have yet been paid to Ms. Turner indicates that the circuit court has jurisdiction over City Hospital's reimbursement/subrogation claim.

In sum, we find that City Hospital's request for relief in circuit court is a claim that must be brought in a civil action under § 1132(a)(3), which, according to the express provisions of § 1132(e), must be brought in federal district court. Therefore, the circuit court below properly ruled that it does not have jurisdiction to decide, limit, or enforce City Hospital's subrogation rights to the proposed minor settlements submitted by Ms. Turner on behalf of her children.[10]

## IV.

## CONCLUSION

Having found no error in the circuit court's finding that it does not have jurisdiction under ERISA to decide, limit, or enforce City Hospital's subrogation rights to the proposed minor settlement below, we affirm the Sep-

---

10. We wish to emphasize that even though we find any action by City Hospital to enforce its subrogation rights to be completely preempted, the Circuit Court of Berkeley County clearly retains jurisdiction to approve or disapprove the proposed infant settlements set forth in the petitions for approval of minor settlements.

tember 20, 2007, order of the Circuit Court of Berkeley County.

Affirmed.

Justice ALBRIGHT not participating.

Senior Status Justice MCHUGH sitting by temporary assignment.

Justice STARCHER dissents and reserves the right to file a dissenting opinion.

STARCHER, J., dissenting.

(Filed Dec. 30, 2008)

On behalf of every lawyer who is seeking justice for a client, I dissent.

This case is about a car wreck involving infants that occurred in October 2004, the parties' efforts to get that case settled, and the parties' aborted attempt to get the settlement approved by the circuit court, in September 2007. Now, over four years after the wreck, this Court has ruled that the parties should instead venture into federal court and get a federal district judge to do what the circuit court could have already done. I refuse to condone this time-consuming, expensive procedure over justice and substance.

The tragic facts of this case are simple. Charles Turner, Jr. got drunk and took his three children for a drive. His children were seriously injured in a crash. The children's mother, Diane Turner, sued the reckless father and the owners of the vehicle, grandparents Laurie and Charles Turner, Sr.

The children's mother paid for health insurance through her employer, City Hospital. That health insurance plan paid for the children's medical care.

In the trial court below, attorneys for the mother and children and for the three defendants met in a mediation conference and agreed to settle this case for the limits of the available insurance policies. The insurance companies for the defendants agreed to pay the money to the injured children, for their future care, medical needs, education and protection. Though not a party in the lawsuit, City Hospital and its claims administrator (a company called Infor–Med Insurance Services) were invited to participate in the mediation, but refused.

After the attorneys had done all the work necessary to finalize the settlement of this case, City Hospital intervened and demanded a huge chunk of the settlement money. City Hospital essentially insisted that it had a subrogation contract with Diane Turner—and insisted that Diane Turner had to take money out of her children's settlement and pay back the hospital for all the past medical care provided. Not only that, but City Hospital refused to pay any attorney fees or expenses for all of the work done to litigate and settle the case.

In West Virginia, the "made whole doctrine" stops an insurance company from gobbling up a plaintiff's entire settlement under the rubric of "subrogation" if the settlement is insufficient to fully compensate the plaintiff's past and future losses. The equitable principle underlying the made whole doctrine is that the burden of loss should rest on the party paid to assume the risk—usually an insurance company—and not on the party least able to shoulder the loss.[1] There are

---

1. As this Court stated in *Porter v. McPherson*, 198 W.Va. 158, 162–63, 479 S.E.2d 668, 672–73 (1996):

In insurance cases, the made-whole rule has been interpreted as meaning "[u]nder general principles of equity, in the absence of statutory law or valid contractual obligations to the contrary, an insured must be fully compensated for injuries or losses sustained (made whole) before the subrogation rights of an insurance carrier arise." *Wine v. Globe American Casualty Co.*, 917 S.W.2d 558, 562 (Ky.1996); *see also Hill v. State Farm Mut. Auto. Ins. Co.*, 765 P.2d 864, 868 (Utah 1988) ("Where the insured settles with the tort-feasor, the settlement amount goes to the insured unless the insurer

can prove that the insured has already received full compensation."); 16 George J. Couch, *Couch on Insurance 2d* § 61:64 at 145–46 (Ronald A. Anderson & Mark S. Rhodes eds., rev. ed.1983) (stating that "in absence of waiver to the contrary, ... no right of subrogation against the insured exists upon the part of the insurer where the insured's actual loss exceeds the amount recovered from both the insurer and the wrongdoer, after deducting costs and expenses"). The equitable principle underlying the made-whole rule in insurance subrogation cases is that the burden of loss should rest on the party paid to assume the risk (the insurer) and not on the party least able to shoulder

several factors a court must consider when applying the doctrine:

> When applying the made whole doctrine it is incumbent on the circuit court to consider: 1) the ability of parties to prove liability; 2) the comparative fault of all parties involved in the accident; 3) the complexity of the legal and medical issues; 4) future medical expenses; 5) nature of injuries; and 6) the assets or lack of assets available above and beyond the insurance policy.

Syllabus Point 3, *Provident Life and Acc. Ins. Co. v. Bennett*, 199 W.Va. 236, 483 S.E.2d 819 (1997). *See also, Kittle v. Icard*, 185 W.Va. 126, 405 S.E.2d 456 (1991).

Most importantly, a *per curiam* opinion from the Fourth Circuit Court of Appeals indicates that West Virginia's made whole doctrine is not preempted by ERISA. *See Martine v. Hertz Corp.*, 103 F.3d 118, 1996 WL 694438 (4th Cir., 1996).

But the majority opinion dryly holds that even if the plaintiff children in this case aren't being made whole by their settlement with the defendants, and even if the made whole doctrine isn't pre-empted by ERISA, that City Hospital can still muck up the whole proceedings by dragging a state law tort suit into federal court to fight over the amount of subrogation to which City Hospital *might* be entitled.

I think a federal court will—or at least should—approve the infant settlement in this case, and disapprove of City Hospital's attempt to take money away from the children under the made whole doctrine. But in the process, much time will have been spent, and much attorney and judicial time will have been wasted.[2]

I dissent because, in my 12 years on the appellate bench, I have too often seen arcane procedural decisions like this one flow forth from this Court. These decisions brilliantly and eloquently describe the trees, while failing to recognize the surrounding forest. These kinds of decisions may be technically correct, but they wholly miss the public policy waves that will ripple from the Court's decision.

The effect of the majority's decision is the make the resolution of a "simple" car wreck case beyond the comprehension of both the lay citizen and all but the most well-trained, experienced lawyers. A citizen injured by another's negligence can no longer call up the other's insurance company and expect a quick, fair settlement, nor can a lawyer acting on behalf of the injured citizen. Instead, citizens and lawyers must now weave through a maze of subrogation liens filed by insurance companies, hospitals and doctors, and government social agencies that administer Medicare or Medicaid. A settlement—which in years past would have been fair to both plaintiff and defendant—is today insufficient to pay for both the mass of liens and for the plaintiff's future expenses. The result is that plaintiffs—and their lawyers—are less willing to pursue cases where the plaintiffs have "lesser" damages[3], but at the same time must demand even higher settlement values from defendants where the damages are greater.

Let me put it another way: the majority's decision is one more brick in a wall designed to keep injured plaintiffs from seeking justice in the court system. The majority opinion allows company health insurers to turn a simple, state-law tort suit over a car wreck into a federal preemption case revolving around the unfathomable morass called

---

the loss (the inadequately compensated insured). *Wine*, 917 S.W.2d at 562.

2. If City Hospital is, essentially, wasting the parties' and the court's time by insisting that the subrogation issue be litigated to the same result in federal rather than state court, then I think another question is relevant: should City Hospital be compelled, under Rule 11 of the *Federal Rules of Civil Procedure,* to compensate the parties or otherwise be sanctioned for generating frivolous litigation?

3. I recognize that for every injured plaintiff, and for every defendant facing a lawsuit, their case is exceptionally important and "valuable." But while a case has esoteric value to the parties, a lawyer running a legal practice must sometimes think as a business-person—for their own sake and the sake of their client—and coldly view their client's case in purely economic terms.

So, for lack of a better term, I chose the exceptionally term "lesser" damages to denote cases different from those with "greater" damages.

ERISA. It is my belief that this Court should always work to improve access to the Courts and to simplify the administration of justice. Justice should not be determined by the size of one's checkbook, and whether one can hire the most lawyers to create or navigate an administrative maze. But that is exactly what the majority opinion encourages.

The use of the word "preemption" in today's courtroom is an obscenity—and I reach that view of today's world after 32 years on the trial and appellate bench. Parties who seek to preempt the effect of state law through the application of federal law are oftentimes not looking for justice or fairness—they are looking to avoid responsibility. I cannot accept that Congress intended for most federal laws, including ERISA, to be vessels of absolution for wrongdoers. State laws designed to stimulate responsible behavior by dependable citizens, state laws designed to punish and correct transgressions, and state laws designed to hold citizens accountable for their actions, are not supposed to be wholly suppressed merely by a litigant muttering the word "ERISA." But the majority's opinion is one step toward making such wholesale preemption of state law a reality.

\* \* \*

I must say one final thing, and this case is as good a place as any to say it. I have been guided these many years by a quote from Thomas Jefferson which says:

I am not an advocate for frequent changes in laws and constitutions, but laws and institutions must go hand in hand with the progress of the human mind. As that becomes more developed, more enlightened, as new discoveries are made, new truths discovered and manners and opinions change, with the change of circumstances, institutions must advance also to keep pace with the times. **We might as well require a man to wear still the coat which fitted him when a boy as civilized society to remain ever under the regimen of their barbarous ancestors.**

I firmly believe that laws and institutions are not set in stone, but should be continuously interpreted and reformed to keep pace with the times. I have dedicated my career to tailoring the law to an ever-growing, ever-advancing society. And I hope that the words of Jefferson will continue to inspire other lawyers and judges who seek justice for their clients.

\* \* \*

Getting back to the case at hand: the law is generally designed to stimulate personal responsibility for one's actions, and it should always be interpreted in a way that molds existing law to modern society. The effect of the majority opinion, however, is to interpret ERISA in a way that stifles the power of the judiciary and that discourages personal responsibility.

I therefore respectfully dissent.