IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

FILED
**June 5, 2024**
ASHLEY N. DEEM, DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**VONDA M.,**
**Defendant/Third-party Plaintiff Below, Petitioner**

**v.)  No. 23-ICA-122**        (Circuit Ct. Webster Cnty. No. CC-51-2019-P-12)

**PAMELA M.,**
**Third-party Defendant Below, Respondent**

### MEMORANDUM DECISION

Vonda M. appeals the Circuit Court of Webster County's February 8, 2023, and February 28, 2023, orders.[1] Pamela M. timely filed a response.[2] Vonda M. filed a reply. The issue on appeal is whether the circuit court erred when it granted summary judgment to Pamela M. on Vonda M.'s declaratory judgment action and conversion claim.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Vonda M. and Luke M. were married on June 30, 2006. Six children were born during the marriage. Vonda M. and Luke M. were separated on January 7, 2018, and an agreed final divorce order was entered on June 29, 2018.

The agreed final order adopted a property settlement agreement between the parties that provided for a division of all marital assets and debts accumulated by Vonda M. and Luke M. during their marriage. Pertinent to this appeal, the settlement agreement stated that Luke M. was to liquidate his possession of rhodium, split the proceeds with Vonda M.,

---

[1] Consistent with West Virginia practice in cases with sensitive facts, we use initials to protect the identities of those involved. *See B.J.R. v. Huntington Alloys Corp.*, No. 20-0548, 2022 WL 123125, at *1 n.1 (W. Va. Jan. 11, 2022) (memorandum decision); *see also* W. Va. R. App. P. 40.

[2] Vonda M. is represented Anthony Sparacino, Jr., Esq. Pamela M. is represented by Michael Doss, Esq.

and pay Vonda M. an equalizing payment of $258,275.00.[3] Of the amount owed, $100,000.00 was to be paid in cash within 90 days of the entry of the final divorce decree. The remaining amount was to be paid to Vonda M. from Luke M.'s employer sponsored retirement account via a qualified domestic relations order ("QDRO").[4]

Luke M. was a physician working at Webster County Memorial Hospital and participated in a retirement plan sponsored by the hospital. Following the entry of the agreed final order in the divorce action on June 29, 2018, Luke M. delivered two checks made out jointly to Vonda M. and his divorce attorney, in the amount of $100,000 for the initial equitable distribution payment required by the property settlement agreement, and in the amount of $51,513.90 for Vonda M.'s half of the amount received from the sale of the rhodium. The checks were held in trust by Luke M.'s divorce attorney until Vonda M. executed deeds to certain real estate awarded to Luke M.

On September 21, 2018, Luke M. was shot and killed by Vonda M.'s father. At the time of Luke M.'s death, Vonda M. had neither executed the deeds to the real property awarded to Luke M. nor submitted a QDRO to allow for the release of the remainder of the equalizing payment from the retirement account.

On April 26, 2019, Donice M., as administratrix of Luke M.'s estate, filed the underlying action in circuit court seeking specific performance of certain obligations that she claimed Vonda M. owed Luke M.'s estate under the property settlement agreement. During discovery, Vonda M. learned that, prior to his death, Luke M. changed the death beneficiary on his retirement account to the respondent, Pamela M.[5] She also learned that the retirement account administrator released the account to Pamela M. in June of 2019. Pamela M. stated that she would release the money from the retirement account paid to her back to the Estate in a sum sufficient to pay the retirement funds awarded to Vonda M. as a part of the divorce.

---

[3] Rhodium is a rare, non-radioactive chemical element and transition platinum metal with various uses including: coating for optic fibers in the chemical industry, optical mirrors, jewelry, and acts as a catalyst in catalytic converters for cars. Rhodium is considered valuable and has become a focus for some investors.

[4] A qualified domestic relations order "creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan." *See* ERISA § 206(d)(3)(B)(i).

[5] Luke M. allegedly changed the death beneficiary of his retirement account to Pamela M., his fiancé, on August 23, 2018. Luke M. died less than a month later.

On February 27, 2020, Vonda M. filed an amended answer, a counterclaim against the Estate of Luke M., and a third-party complaint against Pamela M. Vonda M. argued in the counterclaim that Luke M. owed her certain obligations under the property settlement agreement that had not been satisfied prior to his death, including $158,275.00 that was held in Luke M.'s retirement account at the time of his death. She also claimed that she had never been paid the $100,000.00 equitable distribution payment required by the property settlement agreement, the $51,510.00 owed to her for her half of the amount received from the sale of the rhodium, or the child support that Luke M. owed through the time of his death. The third-party complaint sought a declaratory judgment that Vonda M. had a right to a share of Luke M.'s retirement account and asserted a conversion claim.

Vonda M. subpoenaed Voya Retirement Insurance and Annuity Company ("Voya"), the company that managed Luke M.'s employer-sponsored retirement accounts, to locate Luke M.'s retirement funds.[6] In response to a subpoena *duces tecum*, Voya produced a handwritten letter from Pamela M., Luke M.'s death certificate, and a letter to Charles M., Luke M.'s father. Voya relayed various information about Luke M.'s retirement account but did not indicate where the money had been transferred. Pamela M. allegedly refused to produce any information regarding Luke M.'s retirement account. Webster County Hospital also failed to disclose where the retirement funds were distributed.

In response to subsequent discovery requests, Pamela M. produced a copy of an account statement showing that she maintained an account with Principal totaling $431,494.13 and that the funds were placed in an account in her name as the death beneficiary of Luke M.'s retirement account. Pamela M. stated that she had not taken any money from the death benefit paid from Luke M.'s retirement account after his death.

By Order dated July 19, 2020, the circuit court ordered Vonda M. to submit a QDRO to the family court by August 31, 2020. A status hearing was held on November 2, 2020, in which the circuit court inquired about Vonda M.'s efforts to obtain entry of the QDRO and ordered that she shall take such actions necessary to finalize and present the QDRO for entry. Additional status conferences were held on January 5, 2021, April 6, 2021, and November 7, 2022. While the QDRO had still not been submitted, Vonda M. represented that the QDRO had been prepared at the November 7, 2022, status conference. At that time, the circuit court ordered Vonda M. to submit the prepared QDRO to the Family Court of Webster County within forty-five (45) days. Further, the Court noted that failure to present the QDRO would be deemed a waiver by Vonda M. of any rights to collect

---

[6] At the time of the divorce, the employer-sponsored retirement account was administered by Voya, but the account was transferred to Principal Financial Group ("Principal") sometime before Luke M.'s death. Principal also manages accounts for the purpose of saving for retirement.

3

equitable distribution proceeds relative to the QDRO. As of the status hearing held January 3, 2023, Vonda M. had not submitted the QDRO per the order of the circuit court.

Pamela M. filed a motion for summary judgment arguing that Vonda M. was not permitted to claim any portion of the retirement account without submission of a QDRO. The circuit court granted Pamela M.'s motion and subsequently denied Vonda M.'s Rule 59(e) Motion to Alter or Amend Judgment for being untimely. It is from this order that Vonda M. now appeals.[7]

> The standard of review applicable to an appeal from a motion to alter or amend a judgment, made pursuant to W. Va. R. Civ. P. 59(e), is the same standard that would apply to the underlying judgment upon which the motion is based and from which the appeal to this Court is filed.

*Goddard v. Hockman*, 246 W. Va. 661, 667, 874 S.E.2d 773, 779 (2022) (quoting Syl. Pt. 1, *Wickland v. Am. Travellers Life Ins. Co.,* 204 W.Va. 430, 513 S.E.2d 657 (1998)).

Our review of a circuit court's entry of summary judgment is *de novo*. Syl. Pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 190, 451 S.E.2d 755, 756 (1994). In conducting a *de*

---

[7] Despite the circuit court's finding that Vonda M.'s Rule 59(e) motion was untimely, upon this Court's review, we find otherwise. Pursuant to Rule 6(a) of the West Virginia Rules of Civil Procedure, when computing a period of time prescribed by the Rules, "the day of the act . . . from which the designated period of time begins to run shall not be included." Further, "[t]he last day of the period so computed shall be included, unless it is a Saturday, a Sunday, or a legal holiday, in which event the period runs until the end of the next day which is not a Saturday, a Sunday, or a legal holiday." *Id.* In addition, "intermediate Saturdays, Sundays, and legal holidays shall be excluded in the computation" when the time prescribed is fewer than 11 days. *Id.* The Supreme Court of Appeals has held that "[t]he term 'legal holiday' in Rule 6(a) of the *West Virginia Rules of Civil Procedure* [1998] includes those legal holidays designated by the Legislature in *W. Va. Code,* 2-2-1 [2006]." Syl. Pt. 2, *Postlewait v. City of Wheeling*, 231 W. Va. 1, 743 S.E.2d 309 (2012). Under W. Va. Code § 2-2-1(a)(3) (2006), the third Monday in February, Presidents' Day, is a legal holiday.

Here, the circuit court entered its order granting summary judgment on February 8, 2023. Pursuant to Rules 59(e) and 6(a), any motion to alter or amend was due on February 23, 2023. Vonda M. filed her Rule 59(e) motion on that day. Accordingly, her Rule 59(e) motion was timely filed, tolling the deadline to appeal the February 8, 2023, order, and rendering this appeal timely as to that order. *See Rose v. Thomas Mem'l Hosp. Found., Inc.*, 208 W. Va. 406, 411-412, 541 S.E.2d 1, 6-7 (2000) (recognizing that a timely filed Rule 59(e) motion tolls the deadline to appeal).

*novo* review, this Court applies the same standard for granting summary judgment that a circuit court must apply, and that standard states, "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." *United Bank, Inc. v. Blosser,* 218 W.Va. 378, 383, 624 S.E.2d 815, 820 (2005) (quoting *Painter*, at 190, 451 S.E.2d at 756, syl. pt. 2). "[T]he party opposing summary judgment must satisfy the burden of proof by offering more than a mere 'scintilla of evidence' and must produce evidence sufficient for a reasonable jury to find in a nonmoving party's favor." *Williams v. Precision Coil, Inc.*, 194 W. Va. 52, 60, 459 S.E.2d 329, 337 (1995) (quotations and citations omitted).

On appeal, Vonda M. raises three assignments of error. First, Vonda M. argues that the circuit court lacked subject matter jurisdiction over her claims related to the funds in Luke M.'s retirement account because the claims are governed by the Employee Retirement Income Security Act ("ERISA") and are preempted by federal law.[8] Upon review, we disagree.

At the onset, we note that West Virginia state courts, including family courts, have regularly exercised jurisdiction over claims related to employer sponsored retirement plans. *See Carl A. v. Deborah A.*, 248 W. Va. 69, 887 S.E.2d 54 (2023); *Lamm v. Lamm*, No.17-1075, 2019 WL 1422720 (W. Va. Mar. 29, 2019) (memorandum decision); *Jones v. West Virginia Public Employees Retirement System*, 235 W. Va. 602, 775 S.E.2d 483 (2015); *Kinsinger v. Pethel*, 234 W. Va. 463, 766 S.E.2d 410 (2014).

The statutory language in ERISA further supports the circuit court's jurisdiction in this case. ERISA applies to any "plan, fund, or program . . . established or maintained by an employer . . . for the purpose of providing its participants or their beneficiaries benefits." *Turner ex. rel. Turner v. Turner*, 223 W. Va. 106, 112, 672 S.E.2d 242, 248 (2008). State laws are subject to either complete or conflict preemption under ERISA. *Id.* Conflict preemption arises from 29 U.S.C. § 1144(a) (2006), which provides that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . ." Under conflict preemption, state laws that conflict with ERISA are therefore preempted by ERISA only if they "relate to" an ERISA plan. *Id.* at 113, 672 S.E.2d at 249. In that scenario, ERISA conflict preemption may only be used as a defense to a state law action, but not grounds for removal to federal court. *Id.* The only state law claims removable to federal court are those that are completely preempted by ERISA civil enforcement provision, 29 U.S.C. § 1132 (2014). *Id.* at 112, 672 S.E.2d at 248. State law claims are subject to complete preemption if the "state-law cause of action . . . duplicates,

---

[8] Vonda M. does not dispute that the circuit court properly exercised jurisdiction over the declaratory judgment action and the conversion claim that was initially pled in the third-party complaint.

supplements, or supplants the ERISA civil enforcement remedy." *Id.* at 114, 672 S.E.2d at 250. Actions under ERISA's civil enforcement remedy may only be brought by a participant, beneficiary, or fiduciary. *See* 29 U.S.C. § 1132(a)(3) (2014). An "alternate payee" is recognized as a beneficiary after the entry of a QDRO. 29 U.S.C. § 1056(d)(3)(K) (2014).

Vonda M.'s claims "relate to" an ERISA plan only insofar as the money she is seeking is held within an employer-sponsored retirement plan. However, Vonda M. is not a participant or beneficiary of Luke M.'s retirement account. Due to her failure to submit a QDRO, Vonda M. has waived her right to bring an action under ERISA's civil enforcement remedy as an "alternate payee."[9] Thus, the circuit court properly exercised subject matter jurisdiction over Vonda M.'s claims.

Second, Vonda M. argues that there is a genuine issue of material fact as to whether Luke M. properly designated Pamela M. as the beneficiary for his retirement account.[10] Specifically, Vonda M. contends that Pamela M. failed to present any evidence in support of her motion for summary judgment and therefore it should be denied. We disagree.

> Summary judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove."

*Painter v. Peavy*, 192 W.Va. 189, 193, 451 S.E.2d 755, 759 (1994) (citation omitted). The movant's burden is "only [to] point to the absence of evidence supporting the nonmoving party's case." *Powderidge Unit Owners Ass'n v. Highland Properties, Ltd.*, 196 W. Va. 692, 699, 474 S.E.2d 872, 879 (1996) (citation omitted). If the movant meets this burden, then the burden shifts to the nonmovant to "identify specific facts in the record and articulate the precise manner in which that evidence supports its claims." *Id.* The

---

[9] QDROs are specifically excepted from ERISA's preemption clause. *See* 29 U.S.C. § 1144(b)(7) (2006). Therefore, the circuit court would retain jurisdiction even if Vonda M. had submitted a QDRO for entry.

[10] Although her arguments are not specifically articulated, Vonda M. seemingly contests whether Luke M. properly executed the beneficiary designation forms at issue. Upon our review of the record, we conclude that any mistake that Luke M. made while completing the beneficiary designation forms did not nullify his intent to make Pamela M. the beneficiary of his retirement account. A plan administrator was present while Luke M. filled out the beneficiary designation form and signed the form as a witness. Therefore, we find no merit in this argument.

nonmovant must present evidence sufficient to survive a motion for directed verdict at trial. *Id.* If the nonmovant fails to meet this burden, summary judgment must be granted. *Id.*

The record before the circuit court contained pleadings, answers to multiple sets of interrogatories, and subpoena responses from Webster County Hospital, Principal, and Voya. As the nonmovant, Vonda M. had the burden to present evidence that would demonstrate a genuine issue of material fact. Pamela M. was only required to identify the evidence in the record which supported her motion.[11] The party who presented such evidence is irrelevant to the court's finding. Therefore, we find no merit in this argument.

Lastly, Vonda M. argues that the circuit court erred when it found that Pamela M. is the legal owner of Luke M.'s retirement account, essentially usurping Vonda M.'s rights awarded to her under the settlement agreement. We disagree to the extent that Vonda M. has failed to secure her interest in the funds without submission of a QDRO. Our Supreme Court has held that "the distribution of retirement benefits from [the Public Employee Retirement System] to a former spouse is accomplished through a QDRO and not through the terms of the final order of divorce." *Jones v. West Virginia Public Employees Retirement System*, 235 W. Va. 602, 613, 775 S.E.2d 483, 494 (2015). Our Supreme Court has also held that "a QDRO is merely the vehicle by which a former spouse seeks to enforce an interest in a pension plan that has already been determined to exist." *Id.* at 617, 775 S.E.2d at 498.

We note that the circuit court found that Vonda M. waived her rights under the property settlement agreement when she failed to submit a QDRO within the specific timeframe ordered by the circuit court. In *Kinsinger v. Pethel*, 234 W. Va. 463, 467, 766 S.E.2d 410, 414 (2014), a former spouse was awarded a portion of the respondent's Thrift Savings Plan as a part of their settlement agreement. Three years after the divorce order was entered, but prior to the entry of a QDRO, the respondent withdrew all the funds from the account. *Id.* at 465, 766 S.E.2d at 412. When the former spouse submitted a QDRO six years after entry of the divorce order, there were no assets remaining in the account. *Id.* The circuit court rejected the respondent's argument that the former spouse's rights under the divorce order were not waived by the equitable doctrine of laches. *Id.*

We observe that due to Vonda M.'s failure to abide by an order of the circuit court to assert her rights through a QDRO, Vonda M. is precluded from further asserting an interest in Luke M.'s retirement account. The laches rationale set forth in *Kinsinger* does not apply where a court specifies a timeframe within which a QDRO must be sought, as occurred in this case.

---

[11] Pamela M. primarily relied on the change of beneficiary form and the absence of a QDRO to support her arguments that summary judgment on Vonda M.'s claims was appropriate.

For the foregoing reasons, we affirm the circuit court's order.

Affirmed.

**ISSUED:** June 5, 2024

**CONCURRED IN BY:**

Chief Judge Thomas E. Scarr
Judge Charles O. Lorensen
Judge Daniel W. Greear