2007 ME 90

**STATE of Maine et al.**

v.

**PHILIP MORRIS, INC., et al.**

Supreme Judicial Court of Maine.

Argued: May 23, 2007.

Decided: July 17, 2007.

G. Steven Rowe, Attorney General, Christopher C. Taub, Asst. Atty. Gen., Peter B. LaFond, Asst. Atty. Gen. (orally), Augusta, for plaintiff.

Charles A. Harvey Jr., Robert S. Frank, Harvey & Frank, Portland, Steven R. Patton (orally), Kirkland & Ellis, LLP, Chicago, IL, John F. Lambert Jr., Teresa Cloutier, Lambert Coffin, Portland, Thomas J. Frederick, Winston & Strawn, LLP, Chicago, IL, Robert J. Gallo, McNeill, Taylor & Gallo, P.A., Dover, NH, Robert J. Brookhiser (orally), Howrey, LLP, Washington, DC, for defendants.

Panel: SAUFLEY, C.J., and CLIFFORD, CALKINS, LEVY, SILVER, and MEAD, JJ.

SILVER, J.

[¶ 1] The State of Maine appeals from an order entered in the Superior Court (Kennebec County, *Studstrup, J.*) dismissing the State's motion for a declaratory judgment and granting Philip Morris, Inc.'s motion to compel arbitration. The State contends that (1) we have appellate jurisdiction over the order dismissing the motion for a declaratory judgment and (2) the State should not be compelled to arbitrate. We dismiss the appeal as interlocutory.

## I. BACKGROUND

### A. The Master Settlement Agreement (MSA)

[¶ 2] In the mid–1990s, the State and forty-five other states and six territories sued the major U.S. cigarette companies. In 1998, the civil action commenced by the State was settled when the Superior Court (*Kravchuk, C.J.*) entered a consent decree and final judgment approving the MSA. The MSA similarly settled the claims alleged by the other states and territories (collectively, "Settling States").

[¶ 3] Pursuant to the MSA, the Settling States released past and future claims against Participating Manufacturers. Participating Manufacturers include both Original Participating Manufacturers and Subsequent Participating Manufacturers. Original Participating Manufacturers are the companies that originally joined the MSA. Subsequent Participating Manufacturers are companies that later signed the MSA. In exchange for the release of claims, the Participating Manufacturers agreed to numerous marketing limitations, other restrictions, and to make substantial annual payments to the Settling States based on their national cigarette sales.

[¶ 4] The MSA provides that an "Independent Auditor" shall calculate and determine the amount of all payments owed pursuant to the MSA. To determine the amount of each Participating Manufacturer's payment, the Independent Auditor begins with a base amount, then applies various adjustments and reductions.

### 1. Non–Participating Manufacturer Adjustment

[¶ 5] Among these adjustments is a Non–Participating Manufacturer Adjustment. A Non–Participating Manufacturer is a tobacco product manufacturer that is not bound by the terms of the MSA. If applied, the Non–Participating Manufacturer Adjustment can reduce the Participating Manufacturers' annual payments. The Non–Participating Manufacturer Adjustment takes effect only if two conditions are met: (1) if the Participating Manufacturers' total market share (based on 1997 levels) decreased more than two percentage points in the calendar year for which the payment is calculated (referred to as a "Market Share Loss"), and (2) if a group of economic consultants determines that the MSA was a "significant factor contributing to" the Market Share Loss.

[¶ 6] The MSA, however, provides a safe-harbor for the Settling States to avoid application of the Non–Participating Manufacturer Adjustment. If the Settling State had a "Qualifying Statute" in full force and effect for the entire year before the payment is due and the Settling State has "diligently enforced" the statute, then the Settling State's allocated payment is not subject to the Non–Participating Manufacturer Adjustment.

[¶ 7] A Qualifying Statute is a law that neutralizes the costs and other disadvantages that Participating Manufacturers experience because they, unlike the Non–Participating Manufacturers, agreed to the terms of the MSA. If a Settling State is not subject to the Non–Participating Manufacturer Adjustment because it diligently enforced its Qualifying Statute, then the amount of the Non–Participating Manufacturer Adjustment is reallocated on a pro-rata basis to the Settling States that did not diligently enforce their Qualifying Statutes.

### B. The Present Dispute

[¶ 8] The present case concerns the Independent Auditor's calculation of the Non–Participating Manufacturer Adjustment in 2003. It is undisputed that the two requirements for the Non–Participating Manufacturer Adjustment were met. First, in 2004, the Independent Auditor determined that in 2003 the Participating Manufacturers experienced a sufficient Market Share Loss. Second, in March 2006, an economic consulting firm selected by the parties determined that the MSA was a significant factor contributing to the loss. Because the two conditions were satisfied, the Original Participating Manufacturers requested that the Independent Auditor apply the 2003 Non–Participating Manufacturer Adjustment to reduce their 2006 payments.

[¶ 9] The Settling States then requested the Independent Auditor to follow its practice of presuming diligent enforcement if a Settling State had enacted a Qualifying Statute. The Independent Auditor continued its prior practice and accordingly determined not to apply the Non–Participating Manufacturer Adjustment.

[¶ 10] In April 2006, the Original Participating Manufacturers requested that the parties arbitrate the Independent Auditor's decision not to apply the 2003 Non–Participating Manufacturer Adjustment. The State refused and filed a declaratory judgment action requesting that the Superior Court declare that the State had diligently enforced its Qualifying Statute. The Original Participating Manufacturers then filed a motion to compel arbitration, and the Subsequent Participating Manufacturers joined in the motion.

### C. The Superior Court's Decision

[¶ 11] The Superior Court granted the Original Participating Manufacturers' mo-

tion, ordered the parties to submit to arbitration pursuant to the MSA, and dismissed the State's motion for a declaratory judgment. The court ruled that the arbitration requirement of the MSA compelled arbitration to determine the issue of whether the State had diligently enforced its Qualifying Statute. The arbitration clause, MSA § XI(c), provides:

> *Resolution of Disputes.* Any dispute, controversy or claim arising out of or relating to calculations performed by, or any determinations made by, the Independent Auditor (including, without limitation, any dispute concerning the operation or application of any of the adjustments, reductions, offsets, carry-forwards and allocations described in subsection IX(j) or subsection XI(i)) shall be submitted to binding arbitration before a panel of three neutral arbitrators, each of whom shall be a former Article III federal judge. Each of the two sides to the dispute shall select one arbitrator. The two arbitrators so selected shall select the third arbitrator. The arbitration shall be governed by the United States Federal Arbitration Act.

[¶ 12] The State appealed the court's decision. The Original Participating Manufacturers and Subsequent Participating Manufacturers then moved to dismiss the appeal, contending that an appeal of an order compelling arbitration is not a final judgment and that we should dismiss the matter for lack of jurisdiction. The State filed a motion opposing the motion to dismiss. We consolidated consideration of the motion to dismiss with our review of the merits of this appeal.

## II. DISCUSSION

[¶ 13] The State contends that its motion for a declaratory judgment was a new action, and thus the court's order dismissing that action is a final judgment appropriate for our review. The State further contends that even if the court's decision is not a final judgment, extraordinary circumstances warrant our review of the present case.

[¶ 14] The Uniform Arbitration Act, 14 M.R.S. §§ 5927–5949 (2006), applies to situations where there is "[a] written agreement to submit any existing controversy to arbitration." 14 M.R.S. § 5927. Subsection 5945(1) provides the grounds from which an appeal involving arbitration may be taken:

A. An order denying an application to compel arbitration made under section 5928;

B. An order granting an application to stay arbitration made under section 5928, subsection 2;

C. An order confirming or denying confirmation of an award;

D. An order modifying or correcting an award;

E. An order vacating an award without directing a rehearing; or

F. A judgment or decree entered pursuant to the provisions of this chapter.

14 M.R.S. § 5945(1).

[¶ 15] The State has brought the wrong action to challenge the substantive arbitrability of the current dispute concerning the Non–Participating Manufacturer Adjustment. We have consistently held that the Uniform Arbitration Act "provides two separate avenues for determining the substantive arbitrability of a particular dispute": (1) a motion to compel or stay arbitration and (2) a motion to vacate an arbitral award. *Creamer v. Bishop,* 2006 ME 95, ¶ 2, 902 A.2d 838, 839 (*per curiam*) (citation omitted); *J.M. Huber Corp. v. Main–Erbauer, Inc.,* 493 A.2d 1048, 1050 (Me.1985) (citation omitted); *Cape Elizabeth Sch. Bd. v. Cape Elizabeth*

*Teachers Ass'n,* 435 A.2d 1381, 1383 (Me. 1981) (citation omitted).

[¶ 16] These two means are exclusive, and we have rejected the use of a declaratory judgment action as a separate means of determining the arbitrability of a suit and securing a stay of arbitration. *See J.M. Huber Corp.,* 493 A.2d at 1050; *Cape Elizabeth Sch. Bd.,* 435 A.2d at 1383–84. We have clearly articulated the rationale for disallowing the use of declaratory judgments in the context of arbitration: entertaining such actions would increase court interference and delay the dispute resolution process. *Cape Elizabeth Sch. Bd.,* 435 A.2d at 1383.

[¶ 17] Through a declaratory judgment action the State asserts contentions that pursuant to the Uniform Arbitration Act would have been correctly advanced in a motion to stay arbitration. Had the State brought a motion to stay arbitration, the court's denial of that motion would not have been appealable. *See* 14 M.R.S. § 5945(1); *J.M. Huber Corp.,* 493 A.2d at 1050; *Cape Elizabeth Sch. Bd.,* 435 A.2d at 1383. By bringing a declaratory judgment action instead of a motion to stay arbitration, the State does not create a final judgment which it may then appeal.

[¶ 18] The State's final argument that we should exercise appellate jurisdiction because "extraordinary circumstances" exist is also unpersuasive. The State asserts the final judgment rule allows an appeal in the present case. The final judgment rule is a judicial creation, and there are a number of judicially created exceptions to the rule. Alexander, *Maine Appellate Practice* § 304 at 167 (2005).

[¶ 19] In 14 M.R.S. § 5945(1), the Legislature explicitly determined what decisions concerning arbitration may be appealed. We have declined to expand our appellate jurisdiction and hear "appeals at a point in the arbitration process unintended by the legislature." *Cape Elizabeth Sch. Bd.,* 435 A.2d at 1383. The plain language of subsection 5945(1), which lists the six circumstances under which an appeal may be taken, does not evince legislative intent to include an appeal in "extraordinary circumstances." *See Tibbetts v. Me. Bonding & Cas. Co.,* 618 A.2d 731, 733 (Me.1992). Because the limit to our jurisdiction is statutory and not prudential, the final judgment rule is inapplicable.

The entry is:

Appeal dismissed.