681 S.E.2d 96

**Darrell V. McGRAW, Jr., Attorney General, The State of West Virginia; The West Virginia Public Employees Insurance Agency; and The West Virginia Department of Health and Human Resources, Plaintiffs Below, Appellants,**

v.

**The AMERICAN TOBACCO COMPANY, et al., Defendants Below, Appellees.**

No. 33873.

Supreme Court of Appeals of West Virginia.

Submitted Feb. 24, 2009.

Decided June 22, 2009.

214

Ronald R. Brown, Assistant Attorney General, Charleston, WV, for Appellants.

Mark W. Kelley, Ray, Winton & Kelley, PLLC, Charleston, WV, and Robert J. Brookhiser, Elizabeth B. McCallum, Howrey, LLP, Washington, D.C., *Pro Hoc Vice*, and John F. Billings, Lexington, KY, for Appellee Subsequent Participating Manufacturers, Commonwealth Brands, Inc., et al.

David B. Thomas, Pamela L. Campbell, Teresa K. Thompson, Allen Guthrie McHugh & Thomas, PLLC, Charleston, WV, and James D. Mathias, C. Dylan Sanders, DLA Piper U.S. LLP, Baltimore, MD, *Pro Hoc Vice*, for Appellee Original Participating Manufacturer Philip Morris, Inc.

W. Henry Jernigan, Jr., Brace R. Mullet, Dinsmore & Shohl, LLP, Charleston, WV, and Stephen R. Patton, Kirkland & Ellis, LLP, Chicago, IL, *Pro Hoc Vice*, for Appellees Original Participating Manufacturers, R.J. Reynolds Tobacco Company and Lorillard Tobacco Company.

BENJAMIN, Chief Justice.

Appellants, Darrell V. McGraw, Jr., Attorney General, the State of West Virginia, the West Virginia Public Employees Insurance Agency, and the West Virginia Department

of Health and Human Resources (hereinafter collectively "the State") bring the instant matter before this Court upon appeal of a March 20, 2007, order entered by the Circuit Court of Kanawha County. In its March 20, 2007, order, the circuit court held that questions regarding the State's diligent enforcement of its qualifying statute [1] during the year 2003 were subject to nationwide arbitration before three former federal judges pursuant to the terms of the Master Settlement Agreement ("MSA") previously entered into in this litigation. For the reasons set forth herein, we affirm.

## I.

### FACTUAL AND PROCEDURAL HISTORY

In 1994, the State filed suit in the Circuit Court of Kanawha County, West Virginia, against this nation's major tobacco companies seeking damages, including increased health care costs relating to smoking-related illnesses, incurred as a result of the marketing and sale of tobacco products in West Virginia. Similar actions where brought in states throughout the United States and, in 1998, the State, along with forty-five other states,[2] the District of Columbia, the Commonwealth of Puerto Rico and four United States territories, entered into a comprehensive MSA with the original participating manufacturers (hereinafter "OPMs").[3] Pursuant to the terms of the MSA, participating manufacturers (hereinafter "PMs") agreed to extensive restrictions on their marketing, advertising

and lobbying, in addition to annual payments which would be divided among the settling states in exchange for the settling states' release of past and future claims against PMs. On December 11, 1998, the Circuit Court of Kanawha County entered a consent decree approving the MSA and incorporating its terms and provisions. The circuit court retained jurisdiction over the dispute for purposes of implementing, interpreting and enforcing the consent decree and MSA.

Under the terms of the MSA, the PMs make an annual payments into a national escrow account in amounts determined by an independent auditor.[4] Not only does the independent auditor determine the amount of the PMs' individual annual payments, but the independent auditor also performs certain calculations as set forth by the terms of the MSA and allocates those payments among the settling states. Among the calculations performed by the independent auditor is the Non–Participating Manufacturer Adjustment (hereinafter "NPM Adjustment") which, if applied, reduces the PMs' annual payments to account for market share losses caused by MSA's marketing and advertising restrictions. The NPM Adjustment is triggered when the PMs demonstrate that they have collectively lost a market share of more than two percent to the NPMs compared to their combined market share prior to participation in the MSA *and* an economic consulting firm finds that participation in the MSA was a significant factor contributing to that market share loss. Diligent enforcement of its qualifying statute [5] allows a settling state to avoid

---

1. *See, infra*, n. 5.

2. It appears that the remaining four states, Florida, Minnesota, Mississippi and Texas, which filed similar suits against tobacco companies settled the same on an individual basis.

3. Defendants in the original action are designated as OPMs under the terms of the MSA. The MSA also permitted tobacco companies not named as defendants to participate in the settlement. Those tobacco companies opting to voluntarily participate in the MSA are deemed subsequent participating manufacturers (hereinafter "SPMs"). OPMs and SPMs are also sometimes referred to as participating manufacturers (or "PMs") under the MSA and court opinions discussing the MSA. Tobacco companies not joining the MSA are deemed non-participating manufacturers (hereinafter "NPMs").

4. The independent auditor is a national accounting firm jointly selected by the participating manufacturers and the settling states. The duties and responsibilities of the independent auditor are set forth in detail in the MSA.

5. Subsection IX(d)(2)(E) of the MSA defines "qualifying statute" as "a Settling State's statute, regulation, law and/or rule (applicable everywhere the Settling State has authority to legislate) that effectively and fully neutralizes the cost disadvantages that the participating manufacturers experience vis-á-vis Non–Participating Manufacturers within such Settling State as a result of the provisions of this Agreement." West Virginia's qualifying statute is codified at W. Va.Code § 16–9B–1, *et seq*. (1999).

the NPM Adjustment under the terms of the MSA and shifts that state's share of the NPM Adjustment to settling states which do not qualify for the exemption in pro rata proportion to their respective allocable shares. If all settling states demonstrate diligent enforcement then the NPM Adjustment is not applicable for that year's calculation.

The instant dispute arises from the independent auditor's decision, in 2006, to presume all settling states diligently enforced their qualifying statutes when calculating payments due for the year 2003.[6] The PMs disputed this determination and requested that the matter be arbitrated in accordance with the terms of the MSA. The State, like many other settling states, responded by seeking a declaration in state court that it had diligently enforced its qualifying statute for the year 2003 and was, therefore, exempt from application of the NPM Adjustment. In a motion joined by the SPMs, the OPMs asked the Circuit Court of Kanawha County to compel arbitration of this dispute under the terms of the MSA. Specifically, the OPMs argued that Section XI(c) of the MSA required any dispute "arising out of or relating to" the independent auditor's calculations and determinations to be submitted to binding arbitration before a nationwide panel of three former federal judges. Section XI(c) of the MSA provides:

> *Resolution of Disputes.* Any dispute, controversy or claim arising out of or relating to calculations performed by, or any determinations made by, the Independent Auditor (including, without limitation, any dispute concerning the operation or application of any of the adjustments, reductions, offsets, carry-forwards and allocations described in subsection IX(j) or subsection XI(I)) shall be submitted to binding arbitration before a panel of three neutral arbitrators, each of whom shall be a former Article III federal judge.

Although the State conceded before the circuit court that the independent auditor's de-

cision on whether to apply the NPM Adjustment was arbitrable, the State maintained the question of whether it diligently enforced its qualifying statute was a separate and distinct issue not subject to the MSA's arbitration provisions. By order dated March 20, 2007, the Circuit Court of Kanawha County granted the motion to compel arbitration and stayed the State's declaratory judgment action pending arbitration.

In its March 20, 2007, order, the circuit court found:

> The Parties' dispute concerning the 2003 NPM Adjustment, including the State's defense that it diligently enforced its "Qualifying Statute" and is therefore exempt from the NPM Adjustment, must be arbitrated under the MSA's plain language before one nationwide arbitration panel of three former federal judges.

> The MSA's Arbitration Clause, Section XI(c), clearly and unambiguously requires arbitration of this dispute in two separate ways.

> *First,* Section XI(c) broadly requires that "any" dispute "arising out of or relating to calculations performed by, or any determinations made by, the Independent Auditor," "shall be arbitrated." This dispute, including the State's diligent enforcement defense, clearly arises out of, and relates to, determinations the MSA requires the Independent Auditor to make each year—whether to apply the NPM Adjustment and the diligent enforcement exemption to that Adjustment. Thus, Section IX(j) of the MSA sets forth the manner in which payments "shall be calculated" by the Independent Auditor each year, including thirteen specific steps the Auditor must follow in determining the various offsets, reductions and adjustments to the base payment. The sixth of these thirteen steps requires that the "NPM Adjustment shall be applied ... pursuant to subsections IX(d)(1) and (d)(2)...." Subsection IX(d)(1), in turn, sets forth how the NPM Adjustment shall be calculated and deter-

---

**6.** A demonstration was made that the PMs had experienced a market loss share triggering the potential for the NPM Adjustment. Additionally, an economic consulting firm determined that the

MSA was a significant factor in the PMs' market loss share, thus satisfying the second requirement for the application of the NPM Adjustment.

mined, and subsection IX(d)(2) sets forth how the NPM Adjustment is to be allocated among the Settling States, including the exemption for any State that the Auditor determines is diligently enforcing its Qualifying Statute. Accordingly, the MSA not only authorizes but requires the Auditor to determine each year whether the NPM Adjustment and the diligent enforcement exemption to that Adjustment apply.

Moreover, the Independent Auditor made such determinations here. At the urging of the Settling States, it presumed that they had diligently enforced their respective Qualifying Statutes and, therefore, refused to apply the NPM Adjustment. Indeed, this was the only basis upon which the Auditor could deny the Adjustment. As the State admits, both of the requirements for the Adjustment—a "Market Share Loss" and a determination by the "Firm" that the MSA was a "significant factor contributing to" that loss—had been satisfied.

As a result, the dispute here, including the State's diligent enforcement defense, clearly falls within the Section XI(c)'s broad "arising out of or relating to" language.

*Second*, Section XI(c) goes on to provide specific examples of disputes that *are* arbitrable, "including, without limitation, any dispute concerning the operation or application of any of the adjustments ... and allocations described in subsection IX(j)...." As discussed above, subsection IX(j) specifically includes the NPM Adjustment and the diligent enforcement exemption to that Adjustment. Accordingly, the MSA expressly mandates that the present dispute, which concerns the "application" of the NPM Adjustment and the "allocation" of the NPM Adjustment among the Settling States, be arbitrated.

For similar reasons, the Court rejects the State's contention that its diligent enforcement defense is separate and distinct from the Auditor's determination whether to apply the NPM Adjustment, which the State concedes is arbitrable. Under the MSA, diligent enforcement determines whether the NPM Adjustment applies, and

if so, how it is to be allocated among the States. The two issues are necessarily intertwined.

Finally, the MSA provision the State relies upon in opposing arbitration—Section VII—expressly excludes the dispute here from this Court's jurisdiction. It states that *"except as provided in subsections ... IX(d) [and] XI(s),"* this Court "shall be the only court to which disputes under this Agreement are ... presented as to such Settling State." Section VII thus expressly excludes from this Court's jurisdiction disputes, like this one, that fall within Section XI(c). Further, it specifically excludes disputes, such as this one, falling under Section IX(d), which in turn includes both the NPM Adjustment and the diligent enforcement exemption the State invokes here.

(emphasis in original). The State thereafter appealed the circuit court's March 20, 2007, order compelling arbitration to this Court. On appeal, the State initially asserted three assignments of error. First, the State maintained that the circuit court erred in holding that the question of whether the State diligently enforced its qualifying statute was subject to arbitration. Second, the State argued that if the diligent enforcement determination was subject to arbitration that the circuit court erred in directing nationwide, rather than state-specific, arbitration. Finally, the State assigned as error the circuit court's failure to address the State's position on the effect of the June 2003 "star" settlements. In response, both the OPMs and the SPMs argued that this matter is not before this Court in a procedurally proper manner as there is no final order subject to appeal. It is the position of the OPMs and the SPMs that an order compelling arbitration is subject to review solely by means of a petition for writ of prohibition. In response to the substantive matters assigned as error by the State, the OPMs and the SPMs argued that the diligent enforcement determination was subject to arbitration under the plain language of the MSA and as found by courts in 48 jurisdictions addressing the issue. Further, they maintained that the circuit court did not err in finding the dispute subject to nationwide arbitration.

During the oral arguments presented to this Court on February 24, 2009, however, the State abandoned all assignments of error except the determination that the dispute was subject to nationwide arbitration.[7] Accordingly, we shall limit our review of this matter to the procedural posture of this case and the nationwide arbitration finding. Finding the circuit court's order to be well-reasoned, and factually and legally correct, we affirm.

## II.

### STANDARD OF REVIEW

■ The instant matter presents itself to this Court upon the State's appeal of the circuit court's order compelling arbitration.

---

7. Indeed, the State was wise to abandon its argument that the diligent enforcement determination was not subject to arbitration under the MSA as this argument has been uniformly rejected by every jurisdiction addressing the issue. *See, State by Riley v. Lorillard Tobacco Co.*, 1 So.3d 1 (Ala.2008); *Alaska v. Philip Morris Inc.*, No. 1 JU–97–915 CI, 2007 WL 6561051 (Alaska Super.Ct. Feb. 5, 2007); *Arizona v. Honorable Timothy J. Ryan*, No. 1 CA § 07–0083 (Ariz.Ct.App. May 24, 2007); *Arkansas v. American Tobacco Co.*, No. IJ1997–2982, 2006 WL 5400237 (Ark. Cir.Ct.2006); *In re Tobacco Cases*, No. JCCP 4041 (Cal.Ct.App. Dec. 5, 2006); *State ex rel. Suthers v. R.J. Reynolds Tobacco Co.*, No. 97CV3432 (Colo.Dist.Ct. July 19, 2006); *Connecticut v. Philip Morris Inc.*, 289 Conn. 633, 959 A.2d 997 (2008); *Delaware v. Philip Morris USA Inc.*, 925 A.2d 504 (Del.2007); *District of Columbia v. Philip Morris USA Inc.*, 2006 WL 6273143, No.2006 CA 003176 B (D.C.Super.Ct.2006); *Georgia v. Philip Morris USA, Inc.*, No.2006 CV 116128 (Ga.Super.Ct. Feb. 5, 2008); *Hawaii v. Philip Morris USA*, No. 06–1–0695–04 (Haw.Cir. Ct. Aug. 2, 2006); *Idaho v. Philip Morris Inc.*, No. 99567 (Idaho Oct. 12, 2006); *Illinois v. Lorillard Tobacco Co.*, 372 Ill.App.3d 190, 310 Ill.Dec. 222, 865 N.E.2d 546 (2007), *appeal denied*, 225 Ill.2d 657, 314 Ill.Dec. 832, 875 N.E.2d 1119 (2007); *State ex rel. Carter v. Philip Morris Tobacco Co.*, 879 N.E.2d 1212 (Ind.Ct.App.2008); *Iowa v. Philip Morris USA.*, No. 06–1486 (Iowa Feb. 16, 2007); *Kansas v. R.J. Reynolds Tobacco Co.*, No. 96–CV–919, 2007 WL 5416536 (Kan. Dist.Ct., July 10, 2007); *Commonwealth ex rel. Stumbo v. Philip Morris USA*, 244 S.W.3d 116 (Ky.Ct.App.2007), *review denied* (Ky. Feb. 13, 2008); *Ieyoub v. Philip Morris, USA, Inc.*, 982 So.2d 296 (La.Ct.App.2008), *writ denied*, 992 So.2d 942 (La.2008); *Maine v. Philip Morris Inc.*, 928 A.2d 782 (Me.2007); *Maryland v. Philip Morris, Inc.*, 179 Md.App. 140, 944 A.2d 1167 (2008), *cert. denied*, 405 Md. 65, 949 A.2d 653 (2008); *Commonwealth v. Philip Morris Inc.*, 448 Mass. 836, 864 N.E.2d 505 (2007); *Attorney General v. Philip Morris USA.*, 2007 WL 1651839 (Mich.Ct. App. June 7, 2007), *appeal denied*, 480 Mich. 990, 742 N.W.2d 118 (2007); *State ex rel. Nixon v. American Tobacco Co.*, 2007 WL 6509213, No. 22972–01465 (Mo.Cir.Ct.2007); *Montana v. Philip Morris Inc.*, 2007 WL 6509214, No. CDV–1997–306 (Mont.Dist.Ct.2007); *State ex rel. Bruning v. R.J. Reynolds Tobacco Co.*, 275 Neb. 310, 746 N.W.2d 672 (2008); *State of Nevada by Masto v. Second Judicial Dist.*, 125 Nev. 5, 199 P.3d 828 (2009); *New Hampshire v. Philip Morris USA Inc.*, 155 N.H. 598, 927 A.2d 503 (2007); *New Jersey v. Philip Morris USA Inc.*, 2006 WL 6000399, No. C–103–06 (N.J.Super.Ch.2006), *appeal denied*, (N.J.Super.Ct.App.Div. Dec. 4, 2007); *State ex rel. King v. American Tobacco Co., Inc.*, 145 N.M. 134, 194 P.3d 749 (N.M.Ct.App. 2008); *New York v. Philip Morris Inc.*, 8 N.Y.3d 574, 838 N.Y.S.2d 460, 869 N.E.2d 636 (2007); *North Carolina v. Philip Morris USA Inc.*, 666 S.E.2d 783 (N.C.Ct.App.2008), *writ denied*, —— N.C. ——, 676 S.E.2d 54 (N.C.2009); *State ex rel. Stenehjem v. Philip Morris Inc.*, 732 N.W.2d 720 (N.D.2007); *State ex rel. Rogers v. Philip Morris, Inc.*, No. 06AP–1012, 2008 WL 2854536 (Ohio Ct.App. July 24, 2008), *appeal denied*, 120 Ohio St.3d 1455, 898 N.E.2d 969 (Ohio 2008); *Oklahoma v. R.J. Reynolds Tobacco Co.*, 2007 WL 6509215, No. CJ–96–1499 (Okla.Dist.Ct. Jan. 30, 2007); *Oregon v. Philip Morris, USA Inc.*, 2006 WL 6273150, No. 0604–04252 (Or.Cir.Ct., Sept. 6, 2006); *Pennsylvania v. Lorillard Tobacco Co.*, No. 298 D.C.2007 (Pa.Comw.Ct. Mar. 21, 2007); *Rosselló v. Brown & Williamson*, 2007 WL 2844272, No. 97–1910 (D.P.R. Sept. 26, 2007); *Rhode Island v. Brown & Williamson Tobacco Corp.*, 2007 WL 1100077, No. 97–3058 (R.I.Super.Ct., Mar. 27, 2007); *South Carolina v. Brown & Williamson Tobacco Corp.*, No. 97–CP–40–1686 (S.C. Ct. Common Pleas Apr. 27, 2007); *South Dakota v. R.J. Reynolds Tobacco Co.*, No. 24311 (S.D. Jan. 5, 2007); *Tennessee v. Brown & Williamson Tobacco Corp.*, No. M2007–00476–COA–R9–CV (Tenn.Ct.App. Mar. 16, 2007); *Utah v. R.J. Reynolds Tobacco Co.*, No. 2:96–CV–0829 (D.Utah Dec. 15, 2006); *Vermont v. Philip Morris USA, Inc.*, 183 Vt. 176, 945 A.2d 887 (2008); *Virginia v. Philip Morris USA, Inc.*, No. 062245 (Va. Feb. 21, 2007); *Washington v. Philip Morris USA*, No. 59036–7–I (Wash.Ct.App. Feb. 21, 2007); *Wisconsin v. Philip Morris Inc.*, No. 97–CV–0328, 2007 WL 5416538 (Wis. Cir. Ct. June 11, 2007); *State ex rel. Crank v. Philip Morris USA*, No. 26718 (Wyo.Dist.Ct. Jan. 18, 2007). Although the State represented that trial courts in Louisiana and North Dakota have adopted the State's argument regarding the diligent enforcement determination, the State failed to acknowledge, until questioned by this Court, that those trial courts determination were reversed on appeal. *See, Ieyoub v. Philip Morris, USA, Inc.*, 982 So.2d 296 (La.Ct.App.2008), *writ denied*, 992 So.2d 942 (La.2008); *State ex rel. Stenehjem v. Philip Morris, Inc.*, 732 N.W.2d 720 (N.D.2007).

As noted by the Appellees, this Court has traditionally addressed challenges to orders compelling arbitration in proceedings seeking writs of prohibition. *See, e.g., State ex rel. Saylor v. Wilkes*, 216 W.Va. 766, 613 S.E.2d 914 (2005); *State ex rel. Wells v. Matish*, 215 W.Va. 686, 600 S.E.2d 583 (2004) (per curiam); *State ex rel. Dunlap v. Berger*, 211 W.Va. 549, 567 S.E.2d 265 (2002); *State ex rel. United Asphalt Suppliers, Inc. v. Sanders*, 204 W.Va. 23, 511 S.E.2d 134 (1998). The State maintains that its appeal is proper because the relief it sought in its declaratory judgment motion was effectively denied when the circuit court ordered the matter be arbitrated. As such, according to the State, this Court is vested with jurisdiction because it approximated a final order in its nature and effect. *See, Hubbard v. State Farm Indemnity Co.*, 213 W.Va. 542, 549, 584 S.E.2d 176, 183 (2003) (an order "may nevertheless be considered 'final' if it approximates a final order in its nature and effect."); *Durm v. Heck's, Inc.*, 184 W.Va. 562, 566, 401 S.E.2d 908, 912 (1991) ("Generally, an order qualifies as a final order when it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'") (quoting *Catlin v. United States*, 324 U.S. 229, 233, 65 S.Ct. 631, 89 L.Ed. 911 (1945)). We disagree with the State's contention.

This Court recently addressed similar arguments regarding the propriety of an appeal in *Turner by Turner v. Turner*, 223 W.Va. 106, 672 S.E.2d 242 (2008). In *Turner*, we discussed the scope of our appellate jurisdiction stating:

> City Hospital argues that the circuit court order from which this appeal is taken is not a final order because it did not terminate the litigation between the parties on the merits, but expressly stays the action pending the court's next order. The appellants counter that the order falls under the exception to the finality rule announced by this Court in *Durm v. Heck's, Inc.*, 184 W.Va. 562, 401 S.E.2d 908 (1991). We agree with the appellants.

According to W. Va.Code § 58–5–1 (1998), in applicable part,

> A party to a civil action may appeal to the Supreme Court of Appeals from a final judgment of any circuit court or from an order of any circuit court constituting a final judgment as to one or more but fewer than all claims or parties upon an express determination by the circuit court that there is no just reason for delay and upon an express direction for the entry of judgment as to such claims or parties.

This Court has indicated that "[o]ur jurisdiction is limited by Code, 58–5–1, and we are not warranted in entertaining jurisdiction in cases which do not come within the requirements of that section." *Leeson v. Smith*, 132 W.Va. 715, 722, 53 S.E.2d 412, 415 (1949). *See also* Syllabus Point 1, in part, *James M.B. v. Carolyn M.*, 193 W.Va. 289, 456 S.E.2d 16 (1995) ("[t]his Court's jurisdictional authority is either endowed by the West Virginia Constitution or conferred by the West Virginia Legislature."). We have further held:

> Under W. Va.Code, 58–5–1 [1998], appeals only may be taken from final decisions of a circuit court. A case is final only when it terminates the litigation between the parties on the merits of the case and leaves nothing to be done but to enforce by execution what has been determined.

Syllabus Point 3, *James M.B., supra.* *Turner*, 223 W.Va. at 110, 672 S.E.2d at 246–7 (footnote omitted). Finding the order at issue in *Turner* expressly stated that the circuit court did not have jurisdiction over the relevant issue, we concluded that the order was properly appealed because it approximated a final order in nature and effect. *Id.* at 112, 672 S.E.2d at 248. In *James M.B.*, this Court explained, "[w]ith rare exception, the 'finality rule' is mandatory and jurisdictional. Thus, to be appealable, an order must be final ..., must fall within a specific class of interlocutory orders which are made appealable by statute or by the West Virginia Rules of Civil Procedure,[8] or

---

**8.** "This Court may address specific issues that arise by writs of prohibition, certified questions, or by judgments rendered under Rule 54(b) of the *West Virginia Rules of Civil Procedure.* A writ of prohibition sought pursuant to W. Va.Code, 53–1–1 (1923), 'shall lie as a matter of right in all

must fall within a jurisprudential exception.[9] " *James M.B.,* 193 W.Va. at 292–3, 456 S.E.2d at 19–20 (footnotes in original). Arguably, the circuit court's order herein may be construed as a finding that the circuit court did not have jurisdiction over the issue of the diligent enforcement exemption due to the arbitration provision.

The MSA provides that the arbitration proceedings will be governed by the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ["FAA"]. Section 16 of the FAA governs appellate review of motions to compel arbitration, permitting it in some circumstances, while denying it in other. 9 U.S.C. § 16 (1990). As recently explained by the Supreme Judicial Court of Massachusetts when confronted with a similar argument that a motion to compel arbitration under the MSA was not a final appealable order:

> After the appeal was docketed, the participating manufacturers filed a motion to strike the Commonwealth's appeal on the ground that there was no final order from which an appeal could be taken. Appellate review generally requires a final decision, which means "a determination that 'puts an end to litigation, . . . leaving nothing more open to dispute and set[ting] controversy at rest.'" *Chavoor v. Lewis,* 383 Mass. 801, 803, 422 N.E.2d 1353 (1981), quoting *Pollack v. Kelly,* 372 Mass. 469, 475–476, 362 N.E.2d 525 (1977). The judge's dismissal of the Commonwealth's motion and order compelling arbitration was such a final decision. We therefore deny the motion and proceed to the merits. Dismissal is a final order which is subject to immediate appeal. *Green Tree Fin.*

*Corp.-Ala. v. Randolph,* 531 U.S. 79, 89, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000) ("where, as here, [a court] has ordered the parties to proceed to arbitration, and dismissed all the claims before it, that decision is 'final' within the meaning of [the Federal Arbitration Act, 9 U.S.C.] § 16(a)(3), and therefore appealable"). We reach the same conclusion under the Massachusetts Arbitration Act, G.L. c. 251, § 18(a)(6). See *Miller v. Cotter,* 448 Mass. 671, 676–679, 863 N.E.2d 537 (2007) (comparable provisions of Federal Arbitration Act and Massachusetts Act construed similarly).

*Massachusetts v. Philip Morris, Inc.,* 448 Mass. 836, 864 N.E.2d 505, 511 n. 9 (2007). Unlike Massachusetts, the West Virginia statutes governing arbitration, W. Va.Code § 55–10–1, *et seq.* (1882), do not provide for appellate review of motions to compel arbitration. Additionally, the circuit court order herein not only compelled arbitration pursuant to the terms of the MSA, but also specifically *stayed,* rather than dismissed, the State's declaratory judgment action pending arbitration. Thus, the reasoning utilized by the Massachusetts court to permit direct of appeal of a motion to compel arbitration under the MSA cannot be used to justify the State's attempt to directly appeal the circuit court's arbitration order.

Because this Court has never directly addressed the issue and there is authority to support an argument that a direct appeal of a motion to compel arbitration may be appropriate, particularly where the FAA may be involved, we take this opportunity to specifi-

cases of usurpation and abuse of power, when the inferior court has not jurisdiction of the subject matter in controversy, or, having such jurisdiction, exceeds it legitimate powers.' *See also State ex rel. Allen v. Bedell,* 193 W.Va. 32, 454 S.E.2d 77 (1994) (Cleckley, J., concurring). This Court also may answer certified questions that are brought from circuit courts pursuant to W. Va.Code, 58–5–2 (1967), and from federal courts or appellate courts in other states pursuant to W. Va.Code, 51–1A–1 (1976). Moreover, this Court may entertain judgments that are made under Rule 54(b). Rule 54(b) applies to judgments in cases involving multiple parties or claims[.]"

9. "The 'collateral order' doctrine was set forth by the United States Supreme Court in *Cohen, supra* [*Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 546, 69 S.Ct. 1221, 1225, 93 L.Ed. 1528, 1536 (1949)]. In *Durm,* 184 W.Va. at 566 n. 2, 401 S.E.2d at 912 n. 2, we noted the doctrine as an exception to the federal interpretation of Rule 54(b), and we said that under *Cohen* '[a]n interlocutory order would be subject to appeal under this doctrine if it "(1) conclusively determines the disputed controversy, (2) resolves an important issue completely separate from the merits of the action, and (3) is effectively unreviewable on appeal from a final judgment." *Thompson [v. Betts],* 754 F.2d [1243,] 1246 [ (5th Cir.1985) ].' (Citations omitted in *Durm* )."

cally set forth our standards for reviewing circuit court orders directing arbitration.

██ As recognized in *James M.B.*, this Court's jurisdiction is limited by both constitutional and statutory restraints. Finding no statutory authority permitting direct appellate review of a circuit court's motion to compel arbitration, our appellate jurisdiction is limited to final orders. Where a circuit court directs a matter be arbitrated, but does not dismiss the matter from the circuit court's docket, the order is not final[10] in reality nor effect because there may still be issues needing the attention of the circuit court such as enforcing the arbitration decision or determining the procedural propriety of the arbitration proceedings. *See, e.g.,* W. Va.Code § 55-10-3 (1882) (authorizing judgment on arbitration award and court taxation of arbitration costs); W. Va.Code § 55-10-4 (1882) (permitting arbitration awards to be set aside due to misbehavior by the arbitrators); W. Va.Code § 55-10-6 (1882) (permitting modification or correction of arbitration awards under certain circumstances). Without a final order, this Court does not have appellate jurisdiction. Thus, our review of a circuit court's order compelling arbitration is limited to original jurisdiction proceedings.

██ We have previously found that "a petition for a writ of prohibition is an appropriate method by which to obtain review by this Court of a circuit court's decision to compel arbitration." *State ex rel. Saylor v. Wilkes*, 216 W.Va. 766, 772, 613 S.E.2d 914, 920 (2005), citing, *State ex rel. Dunlap v. Berger*, 211 W.Va. 549, 555, 567 S.E.2d 265, 271 (2002). In order to clarify any uncertainty which may have existed in our law, we now hold that a circuit court order compelling arbitration is not subject to direct appellate review prior to the dismissal of the circuit court action unless the order compel-

ling arbitration otherwise complies with the requirements of West Virginia Code § 58-5-1 (1998) and Rule 54(b) of the *West Virginia Rules of Civil Procedure*. A party seeking this Court's review of a circuit court order compelling arbitration prior to entry of a final order which complies with the requirements of West Virginia Code § 58-5-1 (1998) and Rule 54(b) of the *West Virginia Rules of Civil Procedure* must do so in an original jurisdiction proceeding seeking a writ of prohibition.

██ The standard for obtaining relief from a circuit court order by means of a writ of prohibition is well established. In syllabus point one of *Hinkle v. Black*, 164 W.Va. 112, 262 S.E.2d 744 (1979), this Court held that:

[i]n determining whether to grant a rule to show cause in prohibition when a court is not acting in excess of its jurisdiction, this Court will look to the adequacy of other available remedies such as appeal and to the over-all economy of effort and money among litigants, lawyers and courts; however, this Court will use prohibition in this discretionary way to correct only substantial, clear-cut, legal errors plainly in contravention of a clear statutory, constitutional, or common law mandate which may be resolved independently of any disputed facts and only in cases where there is a high probability that the trial will be completely reversed if the error is not corrected in advance.

Further, we have explained that:

[i]n determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no

---

10. Several courts have found that orders compelling arbitration are not final, appealable orders. *See, e.g., Chem–Ash, Inc. v. Arkansas Power & Light Co.*, 296 Ark. 83, 751 S.W.2d 353, 354 (1988) (order compelling arbitration not appealable "did not in effect determine the action or discontinue it. The matter has merely been referred to arbitration and the appellant can obtain review of the arbitration decision and raise the very question presented here, whether the trial court was right in referring the case to arbitra-

tion."); *Muao v. Grosvenor Properties, Ltd.*, 99 Cal.App.4th 1085, 122 Cal.Rptr.2d 131, 134–5 (2002) (order compelling arbitration not appealable until such time as judgment has been entered on the arbitration award); *Wesley Retirement Services, Inc. v. Hansen Lind Meyer, Inc.*, 594 N.W.2d 22, 28 (Iowa 1999) (order compelling arbitration is not one finally adjudicating rights of parties on the merits but is simply an initial step in obtaining a final adjudication);

other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

Syllabus Point 4, *State ex rel. Hoover v. Berger*, 199 W.Va. 12, 483 S.E.2d 12 (1996).

■ In the context of arbitration agreements, this Court has noted that a circuit court addressing a motion to compel arbitration must, in the first instance, determine whether a valid, enforceable arbitration agreement exists as a matter of law. *Dunlap*, 211 W.Va. at 555, 567 S.E.2d at 271. *See also, Saylor*, 216 W.Va. at 772, 613 S.E.2d at 920 ("our review of whether [an arbitration clause] represents a valid and enforceable contract is de novo."); syl. pt. 2, *Riffe v. Home Finders Associates, Inc.*, 205 W.Va. 216, 517 S.E.2d 313 (1999) (question of whether a contract is ambiguous constitutes a legal determination subject to de novo review upon appeal). A circuit court order compelling arbitration is based upon a legal determination that the terms of the arbitration agreement require the matter in dispute to be arbitrated. As such, "we review the circuit court's legal determinations *de novo.*" *Dunlap*, 211 W.Va. at 556, 567 S.E.2d at 272.[11] Combining the appropriate standards

for reviewing a circuit court's legal determinations regarding arbitration agreements and those governing the issuance of a writ of prohibition, we now hold that this Court will preclude enforcement of a circuit court's order compelling arbitration only after a de novo review of the circuit court's legal determinations leads to the inescapable conclusion that the circuit court clearly erred, as a matter of law, in directing that a matter be arbitrated or that the circuit court's order constitutes a clear-cut, legal error plainly in contravention of a clear statutory, constitutional, or common law mandate.

■ Having now expressly found that an order compelling arbitration is not subject to immediate direct appeal, we must now determine whether it is appropriate for this Court to address the substantive issues raised herein, *i.e.* whether the diligent enforcement determination is subject to nationwide arbitration. Our cases have not, heretofore, specifically precluded an appeal of an order compelling arbitration and, thus, there was an arguable ambiguity in our law regarding the propriety of the State's direct appeal. The significance of a decision is this matter is apparent when the recognition is made that the determination of whether the State must participate in the nationwide arbitration with the other settling states necessarily impacts all other settling states as the diligent enforcement determination affects each settling state's share of the 2003 payment. Lending support for our ability to retain jurisdiction over the instant matter and address the substantive issue raised, is the ability to construe the circuit court's order herein as a finding that the circuit court did not have jurisdiction over the diligent enforcement determination due to the arbitration provision. Under the rationale utilized in *Turner*, we may exercise our appellate jurisdiction over this matter by assuming, for

---

11. Other courts reviewing orders compelling arbitration have likewise utilized a de novo standard of review. *See, e.g., Title Max of Birmingham, Inc. v. Edwards*, 973 So.2d 1050, 1052 (Ala.2007) ("We review the trial court's grant or denial of a motion to compel arbitration de novo."); *State ex rel. Carter v. Philip Morris Tobacco Co.*, 879 N.E.2d 1212, 1214–15 (Ind.Ct. App.2008) (a de novo standard of review applies

to a trial court's determination to compel arbitration); *State ex rel. Stenehjem v. Philip Morris, Inc.*, 732 N.W.2d 720, 726 (N.D.2007) (district court's decision to order arbitration under the MSA was not based upon any factual finding, but based upon the interpretation of contractual terms and is, therefore, subject to de novo review).

the purposes of this opinion only, such a construction is correct. Further, in extraordinary circumstances, this Court has addressed issues not properly before it. *See, In re Tyler D.*, 213 W.Va. 149, 578 S.E.2d 343 (2003) (per curiam) (best interests of child justified retention of jurisdiction over appeal in abuse and neglect proceeding after effected parties had moved from jurisdiction). To the extent an argument can be made that a jurisdictional finding was not made by the circuit court, we find the current situation constitutes an extraordinary circumstance permitting this Court to address the substantive issue herein.

## III.

## DISCUSSION

Due to the State's concessions, the only substantive issue remaining before this Court is the circuit court's conclusion that disputes regarding the diligent enforcement determination are subject to nationwide arbitration. The State argues that any arbitration regarding the diligent enforcement determination should be local as the question is governed by state law, West Virginia citizens have an interest in having the issue decided quickly and locally and that a single, nationwide arbitration involving all settling states would be excessively time consuming and costly. Further, according to the State, although the MSA's arbitration provision requires a panel of three former Article III judges with each "side" to the dispute selecting an arbitrator, it does not specifically require a nationwide resolution of the issue. The State's argument continues that the term "side" as used in the arbitration provision means each "side" to an individual dispute and not the two "sides" to the MSA itself, *i.e.*, all settling states as one "side" collectively and all participating as the other "side" collectively.[12] The OPMs and SPMs respond by arguing that the circuit court did not err in finding the dispute was subject to nationwide arbitration under the plain language of the MSA's arbitration provision which calls for a panel of three former Arti-

cle III judges. According to the OPMs and SPMs, a single nationwide arbitration decision is contemplated by the MSA's arbitration provision because the diligent enforcement determinations necessarily impact all settling states' allotments due to the MSA's unitary payment structure and there is a need for uniformity of decision. Further, the OPMs and SPMs argue the "sides" contemplated by the MSA's arbitration provision are the two "sides" to the MSA, otherwise, the arbitration provision would have afforded each state or each participating manufacturer the ability to select an arbitrator.

At its essence, the MSA's arbitration provision is a contractual term set forth in a written agreement between the settling states and the PMs intended to resolve the various claims asserted by the states against the participating tobacco companies. This Court has long held that "[a] valid written instrument which expresses the intent of the parties in plain and unambiguous language is not subject to judicial construction or interpretation but will be applied and enforced according to such intent." Syl. pt. 1, *Cotiga Development Co. v. United Fuel Gas Co.*, 147 W.Va. 484, 128 S.E.2d 626 (1962). Moreover, [t]he mere fact that parties do not agree to the construction of a contract does not render it ambiguous. The question as to whether a contract is ambiguous is a question of law to be determined by the court. Syl. pt. 1, *Berkeley County Pub. Serv. Dist. v. Vitro Corp. of America*, 152 W.Va. 252, 162 S.E.2d 189 (1968). Having reviewed the MSA, including the arbitration provision in dispute, this Court concludes that the provision unambiguously provides for arbitration of a diligent enforcement determination before a single panel of three former federal judges. Although the specific term "nationwide" does not appear in the MSA's arbitration provision, reading the MSA as a whole clearly demonstrates that it contemplates that a single panel of arbitrators resolve disputes regarding any diligent enforcement determination with respect to all MSA participants.

---

12. The State also argues that the circuit court set forth insufficient findings of fact and conclusions of law to support its determination that the dis-

pute is subject to arbitration before "one nationwide arbitration panel of three former federal judges."

The MSA's arbitration provision specifically states "[a]ny dispute, controversy or claim arising out of or relating to calculations performed by, or any determinations made by, the Independent Auditor ... shall be submitted to binding arbitration before a panel of three neutral arbitrators, each of whom shall be a former Article III federal judge." Courts addressing this provision have consistently rejected arguments similar to those set forth by the State herein.[13] We find the reasoning utilized by those courts to be accurate and persuasive.

The Indiana Court of Appeals analyzed the structure of the MSA and the impact of the diligent enforcement determination on all settling states and rejected arguments similar to those made by the State herein explaining:

the State maintains that, to the extent the trial court ordered arbitration by a single, national panel, the court erred by doing so. In support of this argument, the State cites to the language contained in the arbitration clause mandating that arbitrable disputes be submitted to a panel of three neutral arbitrators. The text calls for each of the two sides to the dispute to select one arbitrator, and the two so-selected arbitrators to select the third arbitrator.... The State contends that the two sides referred to in this sub-section of the MSA are the PMs and a single state. The State further argues that, with regard to the question of each Settling State's diligent enforcement of its Qualifying Statute, the Settling States are in conflict and therefore would not all be on the same "side" for arbitration of this issue. It poses this assertion based upon Sub-section IX (d)(2)(C) of the MSA, which reallocates to the remaining Settling States the NPM Adjustment of the Settling States that are not subject to the NPM Adjustment due to the diligent enforcement of their Qualifying Statute....

Both the language and the structure of the MSA require that the dispute concerning the 2003 NPM Adjustment, including the Settling States' claims of diligent enforcement of their Qualifying Statutes,

must be submitted to a single, national arbitration panel. The language of the MSA requires a single arbitration panel with nationwide authority. The arbitration provision expressly provides that "[e]ach of the two sides to the dispute shall select one arbitrator."... Neither does this sub-section provide that each Settling State or each PM select its own arbitrator, nor does it provide that each Settling State or each PM will have its own arbitration panel. Rather, this sub-section of the MSA refers to the two sides to this agreement settling their disputes by choosing one arbitrator for each side. Those two sides are: (1) the PMs (which contend that they are entitled to an NPM Adjustment) and (2) the Settling States (which contend that no NPM Adjustment can be applied). If the parties had meant for each Settling State to have its own arbitrator or arbitration panel, this sub-section of the MSA would not have specified a panel of only three arbitrators, which clearly indicates a national arbitration. The language used evinces the parties' intention to have a single, national arbitration. Moreover, the number of arbitrations and resulting decisions would make reaching a final, national settlement of a single dispute extremely cumbersome.

Furthermore, the MSA is an agreement of nationwide concern, concern not only that the Settling States recover funds expended on behalf of their citizens due to smoking-related illnesses but also concern for the prevention of youth access to tobacco products in the Settling States. Accordingly, the MSA is an agreement with national effect and structure. Specifically, payments by the PMs are national payments, and the NPM Adjustment is a national adjustment....

[T]he NPM Adjustment and its inextricably linked defense of diligent enforcement have nationwide repercussions. Particularly, the application of the diligent enforcement defense for any Settling State affects all other Settling States, thus creating the need for a single decision-maker, and making it all the more important to resolve these disputes under a single set of rules that apply equally to each Settling

**13.** *See,* n. 7, *infra.*

State. The language as well as the structure of the MSA requires disputes such as this to be determined by a single, national arbitration panel.

*State ex rel. Carter v. Philip Morris Tobacco Co.*, 879 N.E.2d 1212, 1219–20 (Ind.Ct.App. 2008). The Supreme Court of Alabama similarly explained the unpersuasive nature of the State's arguments that a single, nationwide arbitration is not required under the terms of the MSA reasoning:

> Because a diligent-enforcement determination as to one settling state will have an adverse impact on the remaining nonexempt settling states, it is essential that disputes regarding diligent enforcement be resolved in a national arbitration proceeding. Individual resolution of diligent-enforcement disputes in 52 separate state courts would involve the application of different standards in determining what activities constitute diligent enforcement and could lead to inconsistent and conflicting determinations on the issue. A national arbitration proceeding will ensure that disputes regarding diligent enforcement are resolved by three neutral arbitrators who are guided by one clearly articulated set of rules that apply universally in a process where all parties can fully and effectively participate.

The State also argues that even if the dispute regarding diligent enforcement is an arbitrable issue, the dispute should be resolved in a local proceeding that excludes the other settling states. The State maintains that the agreement does not envision a national arbitration proceeding based on language in the arbitration provision stating that each of the two sides to the dispute shall select one arbitrator. The State infers from this language that the agreement does not contemplate a national arbitration because the settling states have competing interests as to diligent enforcement.

However, as noted previously, we conclude that the agreement requires a national, as opposed to a local, arbitration proceeding. The agreement is an agreement between 52 states and territories and numerous PMs; it provides that the set-

tling states would dismiss all tobacco-related lawsuits and, as consideration for doing so, would receive annual monetary compensation from the PMs. The settling states represent one side to the agreement; the PMs represent the other side. Therefore, the language of the agreement refers to the collective settling states and the collective PMs, each choosing an arbitrator. We also note that conducting 52 separate arbitration proceedings would likely be fraught with the same type of inequitable and inconsistent results that would arise were the individual state courts to resolve this dispute. Independent resolution of diligent-enforcement disputes by local arbitration panels would likely result in the development of fifty-two different sets of payment rules that would unfairly burden some states and benefit others and result in wave after costly wave of new litigation.

We therefore conclude that both the language and the structure of the agreement compel arbitration of the dispute regarding the State's diligent enforcement of its qualifying statute. We further conclude that the structure and purpose of the agreement envision a national, as opposed to a local, arbitration proceeding.

*State by Riley v. Lorillard Tobacco Co., Inc.*, 1 So.3d 1, 13–14 (Ala.2008) (internal quotations and citations omitted).

The impact of the unitary nature of the MSA and auditor's calculations and the problems which would be incurred by multiple arbitrations of the diligent enforcement determination was further explained in *Connecticut v. Philip Morris, Inc.*, 2005 WL 2081763, *39 (Conn.Super.Ct.2005), *aff'd*, 279 Conn. 785, 905 A.2d 42, 50–51 (2006), wherein the court recognized.

> The problem is even more acute, however, when the resolution of a dispute as to calculations and determinations by the Independent Auditor will necessarily have different effects on different Settling States. Unless such disputes are presented to and decided by tribunals that have the power to hear from and bind each affected Settling State as a party, great mischief can be done and substantial un-

fairness can result. Where, for example, as in this case, it is claimed that an individual Settling State is exempt from the NPM Adjustment for a given year because it diligently enforced a Model Statute that was in full force and effect throughout that year, the decision of the tribunal deciding that issue will not only affect the interests of the Settling State seeking to qualify for the exemption, but those of all other Settling States as well. This is so because the granting of an exemption to one Settling State will inexorably lead to the reallocation of its allocated portion of the NPM Adjustment to all other non-exempt Settling States. Each Settling State thus has a vital interest in the granting or denial of each other Settling State's individual claim for exemption, and for obvious reasons, their interests are conflicting. Submitting such a dispute to a neutral panel of competent arbitrators affords all interested parties the right to be heard on a level playing field where no interested party enjoys an apparent home-field advantage.

In addition to quoting the Connecticut Superior Court's reasoning with approval, the Maryland Court of Special Appeals noted:

> The MSA's payment structure is nationwide and unitary. The independent auditor calculates and determines the participating manufacturers' annual payments and then allocates those funds among the settling states. In the case of diligent enforcement, a single decision-maker is vitally important because the determination for one state affects every other settling state pursuant to § IX(d)(2)(C)'s reallocation provision.
>
> The question of diligent enforcement cannot be made in a vacuum. We concur with the numerous jurisdictions that have held that the present dispute must be resolved under one clear set of rules that apply with equal force to every settling state.

*Maryland v. Philip Morris, Inc.*, 179 Md. App. 140, 944 A.2d 1167, 1180–81 (2008), *cert. denied*, 405 Md. 65, 949 A.2d 653 (2008). Affirming an order compelling arbitration before a "nationwide panel of three former judges[,]" the Nevada Supreme Court likewise explained in *State by Masto v. Second Judicial District*, 125 Nev. 5, 199 P.3d 828, 831 (2009), that:

> The MSA's requirement that diligent enforcement disputes be arbitrated makes sense, given the inherently national character of payment related disputes. Diligent enforcement is not an issue solely affecting an individual state; diligent enforcement disputes affect all of the settling states, as the amounts each state receives are dependent on the diligent enforcement of other states. Therefore, the MSA compels arbitration of diligent enforcement disputes and ensures that such disputes are not subject to state court jurisdiction under the plain language of the MSA.

*State by Masto*, 199 P.3d at 834 (internal citations omitted).

Similarly, the New York Supreme Court, Appellate Division has stated:

> [T]here is a compelling logic to having these disputes handled by a single arbitration panel of three federal judges, rather than numerous state and territorial courts. It saves all parties to the agreement from having to relitigate the Independent Auditor's determinations on multiple occasions, with potentially conflicting decisions by multiple tribunals.... Since the granting of an exemption by one settling state will automatically lead to the reallocation of its allocated portion of the NPM adjustment to all other non-exempt settling states, each governmental signatory has its own self-interest at stake in the outcome of this issue, which is necessarily in conflict with every other state. Such a result defeats the whole purpose of having a[MSA]. The mechanism of submitting disputes involving the decisions of the Independent Auditor to a neutral panel of competent arbitrators, who are guided by one clearly articulated set of rules that apply universally in a process where all parties can fully and effectively participate, obviates this problem and ensures fairness for all parties to the MSA. To hold otherwise is contrary to both the spirit and the plain language of the [MSA].

*New York v. Philip Morris Inc.*, 30 A.D.3d 26, 813 N.Y.S.2d 71, 76 (2006), *aff'd*, 8 N.Y.3d

574, 838 N.Y.S.2d 460, 869 N.E.2d 636 (2007) (internal quotation marks and citation omitted). *See also, Massachusetts v. Philip Morris, Inc.,* 448 Mass. 836, 864 N.E.2d 505, 512–13 (2007) (quoting *State v. Philip Morris,* 30 A.D.3d 26, 813 N.Y.S.2d 71, 76 (2006), with approval and finding diligent enforcement determination is subject to arbitration involving all interested settling states and participating manufacturers before a single arbitration panel); *State ex rel. King v. American Tobacco Co.,* 145 N.M. 134, 194 P.3d 749, 754–5 (App.2008) (same); *State ex rel. Stenehjem v. Philip Morris, Inc.,* 732 N.W.2d 720, 730–31 (N.D.2007) (same); *Vermont v. Philip Morris USA, Inc.,* 183 Vt. 176, 945 A.2d 887, 894–5 (2008) (same).

All courts addressing arguments identical to those posed by the State against the requirement of a single, nationwide arbitration of the diligent enforcement determination have consistently and logically rejected the same. Both the structure and plain meaning of the MSA require a uniform determination of this issue due to the impact the determination relevant to one settling state will have upon all other settling states. Efficiency, logic and the plain meaning of the terms and structure of the MSA lead to the inescapable conclusion that all challenges to a diligent enforcement determination under the MSA are subject to arbitration before a single, nationwide, panel of three former Article III judges. The reasoning and conclusions set forth in the Circuit Court of Kanawha County's order of March 20, 2007, order are both legally sound and correct. Rather than reiterate the well-reasoned analysis of this issue by the numerous authorities cited above and the Circuit Court of Kanawha County, we adopt the reasoning and logic set forth by

those authorities and find that the circuit court did not err in ordering the question of the State's diligent enforcement of its qualifying statute be submitted to nationwide arbitration under the explicit terms of the MSA.

## IV.

### CONCLUSION

The plain and unambiguous terms and structure of the Master Settlement Agreement provide for arbitration of a diligent enforcement determination in a single, unitary proceeding involving all participants to the Master Settlement Agreement having an interest in the resolution of the issue. Therefore, the Circuit Court of Kanawha County did not err in ordering that the "dispute concerning the 2003 NPM Adjustment, including the State's defense that it diligently enforced its 'Qualifying Statute' and is therefore exempt from the NPM Adjustment, must be arbitrated under the MSA's plain language before one nationwide arbitration panel of three former federal judges."

**Affirmed.**

Justice DAVIS and Justice McHUGH deeming themselves disqualified did not participate in this decision.

Judge GAUGHAN and Judge BLAKE sitting by temporary assignment.